PEOPLE, *ex rel.* STREAM CONTROL COMMISSION, *v.* CITY OF PORT HURON.

1. HEALTH—MUNICIPAL SEWAGE—RIVERS.
   In proceeding against city to require it to construct a sewage treatment plant, evidence was sufficient to substantiate State's contention that present raw sewage disposal method into adjacent rivers is a constant menace to the health and well-being of downriver communities and tourists and justified stream control commission's order requiring construction of sewage treatment plant (1 Comp. Laws 1929, § 278 *et seq.*).

2. SAME—POLLUTION OF RIVERS.
   It is no defense to a statutory charge of river-water pollution that others have contributed or are contributing to that condition.

3. SAME—POLLUTION OF RIVERS—DOCTRINE OF COMPARATIVE INJURY.
   In proceeding to compel city to construct a sewage treatment plant and to stop discharging raw sewage into adjacent rivers wherein city claimed other cities were also polluting the waters, the doctrine of comparative injury is inapplicable

since it should be confined to situations where plaintiff can be substantially compensated (1 Comp. Laws 1929, § 278 *et seq.*).

4. INJUNCTION—NATURE OF REMEDY—NUISANCE.

An, injunction is not a remedy which issues as of course and where substantial redress can be afforded by the payment of money and issuance of an injunction would subject defendant to grossly disproportionate hardship, equitable relief may be denied although the nuisance is indisputable.

5. HEALTH—DOCTRINE OF COMPARATIVE INJURY.

The doctrine of comparative injury should not be invoked to justify the continuance of an act that tends to impair public health.

6. SAME—MUNICIPAL CORPORATIONS—DEFENSES—FINANCIAL INABILITY.

Alleged financial inability of city to comply with stream control commission's order to construct a sewage treatment plant and to cease polluting rivers by discharging raw sewage therein is no defense to such order, since a city has the power to raise money by taxation (1 Comp. Laws 1929, § 278 *et seq.*).

7. WAR—HEALTH—POLLUTION OF RIVERS.

Fact that war conditions make it more difficult for a city to comply with order of stream control commission to construct a sewage treatment plant and to cease polluting river waters by discharging raw sewage therein merely affects the time within which there should be compliance with the order (1 Comp. Laws 1929, § 278 *et seq.*).

8. COSTS—PUBLIC QUESTION—POLLUTION OF RIVERS.

No costs are allowed in suit by stream control commission to compel a city to construct a sewage treatment plant and to cease polluting river waters by discharging raw sewage therein, a public question being involved (1 Comp. Laws 1929, § 278 *et seq.*).

Appeal from St. Clair; George (Fred W.), J. Submitted January 15, 1943. (Docket No. 5, Calendar No. 41,945.) Decided April 6, 1943.

Bill by the People of the State of Michigan, on the relation of the Stream Control Commission, to compel the City of Port Huron and others to comply

with an order directing it to construct a sewage treatment plant. Decree for defendants. Plaintiff appeals. Reversed and decree entered for plaintiff.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Harry W. Jackson, Thomas A. Kenney,* and *Daniel J. O'Hara,* Assistants Attorney General, for plaintiff.

*R. J. Inman* (*Watson & Inman,* of counsel), for defendants.

BUSHNELL, J. The stream control commission, created by Act No. 245, Pub. Acts 1929 (1 Comp. Laws 1929, § 278 *et seq.* [Stat. Ann. § 3.521 *et seq.*]), issued an order on February 11, 1936, requiring the city of Port Huron to "proceed to the construction of a sewage treatment plant, and the necessary collecting and intercepting sewers, pumping stations, force mains and other appurtenances, in connection therewith, all when and as approved by the Michigan department of health, to permit treatment for the sewage of the city before its discharge to State waters." The city having failed to comply with this order, the commission filed a bill of complaint on December 9, 1939, for the purpose of enforcing its order and restraining the city from discharging untreated sewage into the Black or St. Clair rivers.

The trial judge held that the grounds of public necessity as disclosed by the testimony were insufficient to warrant "the present interference" by the court. He denied the relief sought, until further order, on the principle that:

"A court of equity will refuse to grant an injunction when it appears that greater injury and inconvenience will be caused to the defendant by

granting the injunction than will be caused to the complainant by refusing it.''

An appeal was taken by the State from a decree in favor of the city. When this decree was entered on October 31, 1940, the trial judge did not have the benefit of *City of Niles* v. *Stream Control Commission,* 296 Mich. 650, decided March 11, 1941. In that case the city of Niles, Michigan, unsuccessfully appealed from a decree dismissing its petition to have an order of the stream control commission held void. That order directed the city to begin the construction of a sewage treatment plant in order to prevent the discharge of raw sewage into the St. Joseph river. This river has its source in Hillsdale county, Michigan, and collected untreated sewage from the cities of Three Rivers and Constantine, Michigan, and Elkhart, Mishawaka, South Bend, Notre Dame, and St. Marys, Indiana, before entering the city of Niles.

The city of Port Huron takes its water from the St. Clair river near Lake Huron, which is connected with Lake St. Clair by the St. Clair river, and discharges its raw sewage into the St. Clair river, which borders it on the east, and into the Black river, a tributary of the St. Clair, which runs through the city. The city of Sarnia and the village of Point Edward, which are situated almost directly opposite the city of Port Huron on the east bank of the St. Clair river in the Province of Ontario, also discharge raw sewage into this river, as does a large oil refinery. During the years 1937, 1938 and 1939, a total of 45,168 vessels passed Port Huron, which added to the pollution of these waters.

The city argues that the construction of a sewage disposal plant will not materially reduce the pollution in the rivers, and insists that its present method of sewage disposal does not create a health hazard amounting to a public nuisance to the people resid-

ing along the river and those in the cities of Marysville, St. Clair, Marine City and Algonac, located within 30 miles below Port Huron.

The record contains sufficient testimony to substantiate the State's contention that the present raw sewage disposal method is a constant menace to the health and well-being of the downriver communities, as well as to tourists. This evidence clearly justifies the commission's order. Under the authority of the *City of Niles Case, supra,* where similar arguments were advanced, it is no defense to a statutory charge of river-water pollution that others have or are contributing to that condition. This court said:

"In order to stop pollution of the river it was necessary for the commission to take action against the city of Niles inasmuch as it was the first city in the State, on the course of the river, below the Indiana cities and thus open the way for suit to compel the Indiana cities to stop pollution of the waters of the river. It is an instance where the State must clean up its own dooryard before being in a position to ask or seek to compel its neighbor to clean up. This was not an arbitrary exercise of power by the commission but a practical movement toward accomplishment of a most desirable end."

Even if we should concur with the trial judge in his conclusion that "a balancing of equities" favors the city, this is not a proper case for the application of that doctrine. The doctrine of "comparative injury" should be confined to those situations where the plaintiff can be substantially compensated. This principle is distinguished in *City of Harrisonville* v. *W. S. Dickey Clay Manfg. Co.,* 289 U. S. 334, 337 (53 Sup. Ct. 602, 77 L. Ed. 1208), where Mr. Justice Brandeis said:

"The discharge of the effluent into the creek is a tort; and the nuisance, being continuous or recurrent, is an injury for which an injunction may be

granted. Thus, the question here is not one of equitable jurisdiction. The question is whether, upon the facts found, an injunction is the appropriate remedy. For an injunction is not a remedy which issues as of course. Where substantial redress can be afforded by the payment of money and issuance of an injunction would subject the defendant to grossly disproportionate hardship, equitable relief may be denied although the nuisance is indisputable. This is true even if the conflict is between interests which are primarily private.''

See, also, *Edwards* v. *Allouez Mining Co.*, 38 Mich. 46 (31 Am. Rep. 301); *Monroe Carp Pond Co.* v. *River Raisin Paper Co.*, 240 Mich. 279; and authorities annotated in 77 L. Ed. 1222.

The doctrine of ''comparative injury'' should not be invoked to justify the continuance of an act that tends to impair public health. In *Board of Commissioners of the County of Ohio* v. *Elm Grove Mining Co.*, 122 W. Va. 442, 451 (9 S. E. [2d] 813), the court said:

''Notwithstanding a business be conducted in the regular manner, yet if in the operation thereof, it is shown by facts and circumstances to constitute a nuisance affecting public health 'no measure of necessity, usefulness or public benefit will protect it from the unflinching condemnation of the law.' 1 Wood on Nuisances (3d Ed.), § 19. * * * There is extremely narrow basis for undertaking to balance conveniences where people's health is involved.''

Defendant city of Port Huron also raises the question of its financial inability to comply with the order. The same question was raised in *Department of Health* v. *City of North Wildwood*, 95 N. J. Eq.

442 (122 Atl. 891). In affirming a judgment for plaintiff, the court said:

"Clearly, to my mind, there is nothing in any of this which constitutes a defense to the bill. The legislature has imposed upon defendant the obligation to do the very thing of which complainant prays this court to enforce the performance and has provided that complainant may apply to this court for such enforcement. The mere fact that defendant cannot legally perform by means of issuing bonds does not show that it cannot legally perform at all. It has the taxing power wherewith to raise funds for the purpose; possibly also the power to do so by special assessment."

The act creating the commission was under the police power vested in the State, and the order in question was not arbitrary or unreasonable but became necessary by reason of the previous refusal of the city of Port Huron to stop pollution of the St. Clair and Black rivers. The evidence justified the order of the commission, and the decree entered below must be vacated.

We are not unmindful of the situation caused by war conditions and the fact that the city of Port Huron will have difficulty in complying with the commission's order due to necessary materials now required for war purposes. This, however, does not, and should not, prevent the city from immediately taking those steps necessary to insure the carrying out of the mandate of the commission, but a reasonable time should be allowed for completion of the project. We apprehend that the State and city can agree upon the time that is necessary, and if they cannot, this is a matter which can be determined by the trial judge upon proper proofs.

The decree is vacated and one will be entered here in conformity with this opinion. A public question being involved, no costs will be allowed. It is so ordered.

Boyles, C. J. and Chandler, North, Starr, Wiest, Butzel, and Sharpe, JJ., concurred.