PEOPLE, *ex rel.* STREAM CONTROL COMMISSION, *v.*
CITY OF PORT HURON.

1. HEALTH—POLLUTION OF STREAMS—PUBLIC POLICY.
   The public policy of the State with reference to the pollution of its lakes, rivers, streams or other waters is declared in the statute creating the stream control commission, whereby it is made unlawful to discharge or permit to be discharged into the various waters of the State, any waste or pollution that would tend to destroy fish life or be injurious to public health (1 Comp. Laws 1929, § 278 *et seq.*).

2. INJUNCTION—COMPLETION OF SEWAGE DISPOSAL PLANT.
   Where the only method for avoiding the pollution of two rivers in a city is by the construction of facilities for the treatment of raw sewage, notwithstanding order of stream control commission to construct such facilities was made over 13 years ago and no sewage treatment plant has been started, city is enjoined to complete such work within 19 months (1 Comp. Laws 1929, § 278 *et seq.*).

3. COSTS—PUBLIC QUESTION—POLLUTION OF STREAMS.
   No costs are allowed on motion for final process to enforce decree in suit to compel a city to construct a sewage treatment plant, a public question being involved (1 Comp. Laws 1929, § 278 *et seq.*).

Motion by plaintiff for issuance of final process in case of *People, ex rel. Stream Control Commission, v. City of Port Huron*, 305 Mich. 153. Submitted January 25, 1949. (Calendar No. 41,945.) Motion granted February 28, 1949.

REFERENCES FOR POINTS IN HEADNOTES
[1] 56 Am. Jur., Waters, §§ 388, 412.
[2] 56 Am. Jur., Waters, § 397.
[3] 14 Am. Jur., Costs, §§ 23, 91.

*Stephen J. Roth,* Attorney General, and *Frank G. Millard,* Special Assistant Attorney General, for plaintiff.

*Samuel D. Pepper,* for defendants.

PER CURIAM: This matter comes before the Court at this time on a motion for final process to enforce a decree entered in the cause on January 7, 1944. The facts involved are not materially in dispute. For many years past the defendant city has been discharging untreated sewage into the waters of St. Clair river and Black river. On February 11, 1936, the stream control commission of the State, acting pursuant to authority vested in it by the statute,* issued an order requiring defendant city to proceed to the construction of a sewage disposal plant, collecting and intercepting sewers, and other necessary appurtenances. No action was taken to comply with the order, and in December, 1939, the stream control commission brought suit in the circuit court of St. Clair county to enforce its order and to restrain the city from continuing to discharge untreated sewage into said rivers. The trial court denied relief, but on appeal the decree was reversed.

As appears from the opinion (*People, ex rel. Stream Control Commission,* v. *City of Port Huron,* 305 Mich. 153), this Court concluded from the record before it that the evidence in the case substantiated the plaintiff's contention that the discharge of raw sewage into the waters of said rivers constituted "a constant menace to the health and well-being of the down-river communities, as well as to tourists." It was further pointed out that defendant city could not justify the continuance of acts tending to impair the public health. In reaching the conclusion indi-

---

* Act No. 245, Pub. Acts 1929 (1 Comp. Laws 1929, § 278 *et seq.,* 2 Comp. Laws 1948, § 323.1 *et seq.* [Stat. Ann. § 3.521 *et seq.*]).

cated, the Court relied on the prior decision in *City of Niles* v. *Stream Control Commission,* 296 Mich. 650, wherein the provisions of the statute creating said commission, and defining its powers and duties, were discussed. The facts in the *Niles Case* were somewhat analogous to those in the case at bar. In upholding the action taken by the commission, it was said:

"The act creating the commission was under the police power vested in the State, and the order in question was not arbitrary or unreasonable but became necessary by reason of the previous refusal of the city of Niles to stop pollution of the stream. The evidence justified the order of the commission."

It may be noted, further, that the act of the legislature referred to vests in the commission, "control of the pollution of lakes, rivers and streams and all waters of the State of Michigan and the great lakes, which are or may be affected by waste disposal of municipalities." (1 Comp. Laws 1929, § 279* [Stat. Ann. § 3.522].) Section 5 of the act (1 Comp. Laws 1929, § 282† [Stat. Ann. § 3.525]) declares that:

"It (the commission) shall have the authority to take all appropriate steps to prevent any pollution which is deemed by the commission to be unreasonable and against public interest in view of the existing conditions in any lake, river, stream, or other waters of the State."

The act further declares it to be unlawful to discharge or permit to be discharged into any of the lakes, rivers, streams, or other waters of this State, any waste or pollution that would tend to destroy fish life or be injurious to public health. The public policy of the State with reference to the pollution

---

\* 2 Comp. Laws 1948, § 323.2.—REPORTER.

† 2 Comp. Laws 1948, § 323.5.—REPORTER.

of waters within its jurisdiction has been thus clearly declared by the legislature.

The opinion of the Court in the instant case was rendered April 6, 1943. At that time, due to war conditions and the consequent difficulty in obtaining necessary materials for construction work, the Court indicated that a reasonable time should be allowed for completion of the project, stating further that the parties to the case could doubtless come to an agreement concerning the matter. This was done; and, as a result of such agreement between the plaintiff and the city, a period of one year and six months from and after the removal of governmental restrictions preventing the use of labor and materials in projects of the character in question, was provided for in the decree. It was further provided that the provisions in said decree restraining the discharge of untreated sewage into the rivers should not become operative until after the expiration of said period.

It is conceded that the restrictions in question were revoked by order of the war production board on October 15, 1945. In March, 1948, the attorney general of the State filed a petition, reciting that the defendant city had not constructed, or started to construct, the sewage treatment plant, intercepting sewers and other appurtenances, necessary for the collection and treatment of the sewage being discharged into the rivers, and asking that the Court issue an injunction as final process under the terms of the decree. Said petition was supported by the affidavit of the secretary of the stream control commission. On the 8th of April, 1948, this Court issued an order requiring defendants to show cause why the relief sought by the petition should not be granted. Defendants filed answer to said order, incorporating therein by reference objections previously filed to the granting of the attorney general's peti-

tion.   Apparently further negotiations between the parties followed, but without attaining any result. The motion for final process was submitted on January 25th of the present year.

Defendants do not claim that any construction work necessary to comply with the decree of this Court has been started, or that any contracts therefor have been let.   It appears, however, that bonds in the sum of $1,600,000 were authorized and were sold for the purpose of raising money for the project.   Said obligations were issued under the provisions of the revenue bond act of 1933 * which authorizes the governing body of a municipality to provide by ordinance for the issuance of bonds payable solely from the net revenues derived from the operation of the public improvement contemplated.   Defendants further claim that the city commission employed engineers to prepare plans and specifications; that bids were advertised for and received in April, 1946, only one of those submitted, however, covering the construction of the entire intercepting system; that further bids were advertised for and received in November, 1947, and January, 1948; and that said bids were rejected because materially in excess of the estimated construction costs.   It is further claimed, and evidenced by a resolution of the city commission, that it is planned to raise additional funds by the issuance of revenue bonds, to obtain revised plans and specifications for the necessary construction work, and to seek bids therefor.

It is further pointed out on behalf of defendants that, if the present method of disposing of the sewage of the city of Port Huron is immediately en-

---

* Act No. 94, Pub. Acts 1933, as amended by Act No. 66, Pub. Acts 1935, Act No. 246, Pub. Acts 1937, Act No. 2, Pub. Acts 1939, Act No. 34, Pub. Acts 1939, Act No. 210, Pub. Acts 1941, Act No. 219, Pub. Acts 1943, Act No. 23, Pub. Acts 1946 (1st Ex. Sess.), Act No. 204, Pub. Acts 1947 (1 Comp. Laws 1948, § 141.101 *et seq.* [Stat. Ann. 1947 Cum. Supp. § 5.2731, *et seq.*]).

joined, the effect will be disastrous from the standpoint of public health and general welfare of said city and the residents thereof. This phase of the situation presents a matter for practical consideration. The problem is one that cannot be solved other than by the construction of proper facilities necessary for the treatment of the raw sewage. It would have been greatly to the advantage of all concerned, including the defendant city, if the order of the stream control commission, made in 1936, had been obeyed at that time. Without reference to such fact, however, the situation must be dealt with as it actually exists today, having in mind the welfare of all concerned, including the residents of Port Huron, Marysville, St. Clair, Marine City and Algonac, and the people living along the river outside of the municipalities named.

The condition existing is one, as indicated in the prior opinion of this Court, that should be remedied as soon as possible. If the course that the city commission claims it is pursuing is followed with reasonable diligence, it seems clear that the desired result can be accomplished in the not far distant future. Restrictions imposed by the Federal government do not now constitute a barrier to the carrying out of the project. The parties agreed, prior to the entering of the decree on January 7, 1944, that 18 months from and after the removal of such restrictions would be a reasonable time for the completion of the necessary work required to comply with said decree. It seems expedient now that a definite date should be fixed, prior to which the sewage disposal plant, the intercepting sewers and other necessary appurtenances, shall be completed, so that the existing situation may be ended.

The injunctive relief sought by the motion of the attorney general will be granted, effective as of October 1, 1950. With reasonable diligence the work

necessary to be done can, we think, be completed by that date. An order will enter accordingly, without costs.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.