MAYOR OF PORT HURON *v.* CITY TREASURER
OF PORT HURON.

1. MANDAMUS—WRIT OF GRACE.
   The writ of mandamus is a writ of grace.

2. STATUTES—CONSTRUCTION—IMPLIED REPEAL—BONDS—HOME-RULE
   ACT—SEWAGE DISPOSAL ACT.
   An amendment of the home-rule act whereby it generally pro-
   vided for publication of notice of resolution or ordinance of
   the legislative body for the issuance of bonds, filing of peti-
   tion for referendum thereon, and approval by a ⅔ majority
   did not impliedly repeal previously-enacted statute permit-
   ting issuance of bonds for construction of sanitary means of
   disposal of garbage, sewage and night soil upon a ⅔ affirma-
   tive vote as to general obligation bonds of the utility but
   excepting necessity of such popular vote when the installation
   of a sewage- or garbage-disposal system was ordered by a court
   of competent jurisdiction, the earlier act being a special one
   (CL 1948, §§ 117.5, 123.247, 123.248).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 34 Am Jur, Mandamus, § 40.
[1] Mandamus against municipality to compel repair or improve-
    ment of drain. 46 ALR 271.
[3] 50 Am Jur, Statutes, §§ 370, 375, 377, 381.
[4-6] 50 Am Jur, Statutes, §§ 561, 563.
[7] 50 Am Jur, Statutes, § 546.
[8-16] 43 Am Jur, Public Securities and Obligations, §§ 37 *et seq.*,
    52 *et seq.*
[10] 38 Am Jur, Municipal Corporations, § 565.
[18] 38 Am Jur, Municipal Corporations, §§ 527, 559; 43 Am Jur,
    Public Utilities and Services, § 2 *et seq.*
[19, 20] 37 Am Jur, Municipal Corporations, § 108; 38 Am Jur,
    Municipal Corporations, §§ 411, 432, 450-452; 43 Am Jur, Pub-
    lic Securities and Obligations, § 32.
[19, 20] What are "necessary expenses" within exception in con-
    stitutional or statutory provision requiring vote of people to
    authorize contracting of debt by municipality, county, or other
    political body, or limiting amount of such indebtedness. 113
    ALR 1202.
[21] 3 Am Jur, Appeal and Error, §§ 823, 824.
[22, 23] 50 Am Jur, Statutes, §§ 181-183.
[24] 14 Am Jur, Costs, § 91.

3. Same—Construction—Public Convenience.
     Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice; to favor public convenience and to oppose all prejudice to public interests.

4. Same—Special Statutes—General Statutes.
     A special statute will be given effect as an exception to a general statute in order to carry out the legislative intent where both statutes relate to the same general subject matter.

5. Same—Particular Intent—General Intent.
     A particular intention in a statute when incompatible with a general intention will be considered as an exception to the general one.

6. Same—Repeal.
     An act will not be construed to repeal or modify earlier legislation, if, giving such effect to the act, an apparent purpose would appear to disturb an established system of written law, covering a vital field in our system of government.

7. Same—Implied Repeal.
     The principle that the law does not favor repeals by implication is of especial application in the case of an important public statute of long standing, which should be shown to be repealed either expressly, or by a strong and necessary implication.

8. Municipal Corporations—Sewage-Treatment System—Bonds—Approval by Electors.
     A peremptory order of the Supreme Court for the installation of a sewage-treatment system in a city transcended local purposes and was for the protection of the people of the State since it was designed to prevent defendant city from further polluting public streams and endangering the health and comfort of not only its own inhabitants but also of all others in any way affected by the pollution of the waters by the city, affording basis for issuance of bonds for construction of such a system pursuant to State statute not requiring notice to electorate and its approval (CL 1948, § 123.241 *et seq.*).

9. Same—Sewage-Disposal System—Bonds—Statutes.
     The statute authorizing issuance of bonds for construction of a sewage-disposal system without giving notice to the electorate or affording an opportunity for approval of the issue constitutes a direct grant of power given to a city irrespective of the provisions of its charter without prohibition or

limitation of anything authorized by the act (CL 1948, § 123.-241 *et seq.*).

10. Same—Sewage- and Garbage-Disposal System.

The inclusion of a garbage-disposal system with a sewage-disposal system was not improper, where it appears that simultaneous construction effected a material financial saving, both were to be paid for by revenue bonds authorized by statute and city ordinance and order of stream control commission for construction of the sewage-disposal system had been approved by the Supreme Court (CL 1948, § 123.241 *et seq.*; Port Huron Revenue Bond Ordinance of 1945).

11. Same—Ordinances—Revenue Bonds—Contracts.

An ordinance providing for revenue bonds for construction of both a sewage- and garbage-disposal system constitutes a contract with the holders of the bonds and the city requiring the latter to use the proceeds to build both systems and pay the bonds from charges collected from the users of both systems (Port Huron Revenue Bond Ordinance of 1945).

12. Same—Garbage Disposal—Sewage Disposal—Revenue Bonds—General Obligation Bonds.

The addition of a garbage-disposal system to a sewage-disposal system for a city was not improper where original revenue bond issue was made pursuant to statute and ordinance authorizing construction of both systems and amount thereof was sufficient to construct the garbage system although later general obligation bonds could be used for the sewage-disposal system only, the total of the later issue and balance of the earlier issue being sufficient to cover cost of the sewage system, and there being nothing to prevent the further financing from being made from general obligation bonds (CL 1948, § 123.241 *et seq.*; § 141.101 *et seq.*; Port Huron Revenue Bond Ordinance of 1945).

13. Same—Sewage Disposal—Garbage Disposal—Revenue Bonds—Reservation of Right to Issue More Bonds—General Obligation Bonds—Referendum.

Reservation of right to issue further revenue bonds, included in city's ordinance for issuance of bonds for construction of both sewage- and garbage-disposal systems, did not limit city to such method of financing the system where city was faced with a peremptory order to construct a sewage-disposal system so as to stop pollution of streams and another statute gave a direct grant of power to issue general obligation bonds to construct a sewage-disposal plant without affording the elec-

torate an opportunity for approving a bond issue under such circumstances (CL 1948, § 123.241 *et seq.*; § 141.101 *et seq.*; Port Huron Revenue Bond Ordinance of 1945).

14. SAME—FINANCING CONSTRUCTION OF SEWAGE-DISPOSAL SYSTEM.
    The choice of one of several methods of financing additional costs of construction of a municipal sewage-disposal system was a legislative matter for the determination of mayor and city commission where statutes, charter and ordinance afforded more than one method (CL 1948, § 123.241 *et seq.*; § 141.101 *et seq.*; Port Huron Revenue Bond Ordinance of 1945).

15. SAME—FINANCING OF COMBINED SEWAGE- AND GARBAGE-DISPOSAL SYSTEM—REVENUE BONDS—GENERAL OBLIGATION BONDS.
    The construction of a combined sewage- and garbage-disposal system may be financed partly from revenue bonds payable by those to whom the service is supplied and by general obligation bonds of city against whom a valid peremptory order has been issued for the construction of a sewage-disposal system (CL 1948, § 123.241 *et seq.*; § 141.101 *et seq.*; Port Huron Revenue Bond Ordinance of 1945).

16. SAME—COMBINED SEWAGE- AND GARBAGE-DISPOSAL SYSTEMS—ADDITIONAL COSTS—REVENUE BONDS—GENERAL OBLIGATION BONDS—ESTOPPEL.
    Fact that when original revenue bond ordinance for construction of combined sewage- and garbage-disposal system of city was adopted the electorate could have asked for a referendum but did not do so as they understood cost of entire interest and principal would be paid from charges to the users of the systems did not estop successor mayor and commission, when faced with peremptory order of Supreme Court for construction of sewage-disposal system, from issuance of general obligation bonds of city in order to finance additional costs (CL 1948, § 123.241 *et seq.*; § 141.101 *et seq.*; Port Huron Revenue Bond Ordinance of 1945).

17. SAME—CONTEMPT—SUPREME COURT.
    The Supreme Court could not hold the entire electorate of a city in contempt for failure to carry out the Court's peremptory order to complete its sewage-disposal system by date set in such order, where a method of financing such project without the electorate's approval was available.

18. SAME—PUBLIC UTILITY—ELECTORATE'S APPROVAL—SEWERS.
    The term "public utility" as used in provision of Constitution requiring affirmative vote of ⅔ of the electors of a city in order to grant an irrevocable franchise is limited to public

utilities supplying water, light, heat, power and transportation to the municipality and its inhabitants and does not include sewers and other works involving the public health or safety (Const 1908, art 8, §§ 22, 23, 25).

19. SAME—GENERAL OBLIGATION BONDS—TAX LEVY IN EXCESS OF CHARTER TAX LIMITATION.

A home-rule city may levy a tax in excess of tax limitation imposed by the city charter for the payment of outstanding general obligation bonds issued for the construction of a sewage-disposal system, if the necessity for such levy were shown to exist (CL 1948, § 123.241 *et seq.*).

20. SAME—TAXATION—LEGISLATURE—IMPAIRMENT OF CONTRACT.

The Constitution vests in the legislature the complete and unrestricted power to limit the rate of taxation of cities for municipal purposes and their powers of borrowing money and contracting debts subject to the prohibition in the State and Federal Constitutions against impairment of a municipal obligation by abrogating or lessening the means of enforcement of it (US Const, art 1, § 10; Mich Const 1908, art 2, § 9, art 8, § 20).

21. SAME—ORDINANCES—QUESTIONS REVIEWABLE.

The question of repeal or amendment of an earlier home-rule city ordinance by a later one is not discussed where the earlier ordinance remains in full force and effect and the later ordinance is complete in itself.

22. STATUTES—TITLE OF ACT—STATEMENT OF MAIN PURPOSE.

The title of an act is complete where it sets forth the main purposes as it need not set forth all of the details necessary to carry out the act (Const 1908, art 5, § 21).

23. SAME—MUNICIPAL CORPORATIONS—SEWAGE- AND GARBAGE-DISPOSAL PLANTS—BONDS—TITLE OF ACT.

Title of act setting forth that one of its purposes was to enable municipalities to provide for disposal of sewage and garbage, to borrow money and to acquire disposal plants was sufficiently broad to cover sections of act pertaining to issuance and terms of general obligation bonds to effect such purpose (Const 1908, art 5, § 21; CL 1948, § 123.241 *et seq.*).

24. COSTS—PUBLIC QUESTION—MANDAMUS—BONDS—SEWAGE-DISPOSAL PLANT.

No costs are allowed in mandamus proceeding to compel city treasurer to countersign general obligation bonds of home-rule city for completion of sewage-disposal plant, a public question being involved (CL 1948, § 123.101 *et seq.*).

Mandamus by Frank O. Staiger, Mayor of Port Huron, and others against Earl Madill, City Treasurer, to compel countersignature of bonds. Stephen J. Roth, Attorney General, intervened as plaintiff. Submitted April 11, 1950. (Calendar No. 44,641.) Writ granted June 5, 1950.

*Samuel D. Pepper* (*Miller, Canfield, Paddock & Stone,* of counsel), for plaintiffs.

*Black & Bush,* for defendant.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *G. Douglas Clapperton,* Assistant Attorney General, for intervening plaintiff.

BUTZEL, J. In 1943, in *People, ex rel. Stream Control Commission,* v. *City of Port Huron,* 305 Mich 153, we upheld the order of the stream control commission directing the defendant to proceed with the construction of a sewage-treatment plant together with necessary collecting and intercepting sewers, pumping station, force mains, and other appurtenances in connection therewith, hereinafter called the sewage-disposal plant, when and as approved by the Michigan department of health, so as to provide for the proper treatment of sewage before its discharge into State waters. We further held that alleged financial inability of the city to comply with the order was no defense since the city has the power to raise money by taxation. However, because of then existing difficulties resulting from war conditions, we allowed a reasonable time for compliance with the order.

In 1949, in *People, ex rel. Stream Control Commission,* v. *City of Port Huron,* 323 Mich 541, on a motion for the issuance of final process in the former

case (305 Mich 153), we were informed that Port Huron had issued and sold $1,600,000 of revenue bonds for the sewage-disposal system;* that bids had been twice solicited for its construction but the cost was materially in excess of the estimate; that the city planned to raise additional funds by the issuance of revenue bonds and also to obtain revised plans and specifications. Our attention was called to the disastrous results that might ensue to the city if we peremptorily restrained it from further discharging its sewage into public waters. We ordered the city to comply with the order of the stream control commission by October 1, 1950, and that injunctive relief would be granted after that date.

To meet the very large increase in the costs of construction, the city commission of Port Huron on September 26, 1949, adopted a resolution to issue $1,300,000 of the city's general obligation bonds, in addition to the $1,600,000 self-liquidating revenue bonds previously issued and sold, so as to provide sufficient funds to construct and pay for a proper sewage-treatment system and also a garbage-disposal plant. The $1,600,000 revenue bonds had been issued in accordance with an ordinance duly passed in 1945 that provided for a garbage-disposal plant in addition to the sewage-treatment plant system, the proceeds of the $1,600,000 self-liquidating bonds to pay the cost. The 1949 resolution for the issuance of the general obligation bonds was not submitted to the electorate but was authorized by the city commission by a resolution which set forth our 2 recent decisions in the cases against the city (*supra*), the obligation of the city to comply with the orders, and the necessity for the city to proceed at once so as to complete the system not later than October 1, 1950. The city commission thus realized its legal duty and

---

* See CL 1948, § 141.101 *et seq.* (Stat Ann 1949 Rev § 5.2731 *et seq.*).—REPORTER.

obligation to carry out our decree when it passed a complete and proper resolution authorizing the issuance of the general obligation bonds of $1,300,000 to complete the sewage-disposal system. The city treasurer of Port Huron refused to countersign the bonds for reasons hereinafter stated. The instant case is an original application brought by the mayor and the city commission of Port Huron as plaintiffs for a writ of mandamus to order the city treasurer as defendant to countersign the bonds. The plans for the sewage-disposal system have been approved by the State commissioner of health and the issuance of the general obligation bonds has been approved by the State municipal finance commission.

Attorneys for defendant in vigorously upholding defendant's position have leveled criticism and charges of delay and poor judgment against plaintiffs and contend that their conduct has not been such as to entitle them to mandamus, a writ of grace. The criticism and charges have been fully answered by plaintiffs and do not create any issues of fact that are of importance in arriving at our decision. They are irrelevant and immaterial to the real issues in this case which only involve questions of law. We are solely interested in the legality of the method and procedure used by plaintiffs to raise the funds with which to carry out the order of the stream control commission as directed in 323 Mich 541 (*supra*).

The most important question raised by the pleadings is whether the issuance of the general obligation bonds of $1,300,000 must be approved by a 3/5 majority of the qualified electors of the city of Port Huron after due notice has been given to them in the same manner and to the extent that is required for issuance of other general obligation bonds issued under the charter of the city of Port Huron and by the home-rule act.

PA 1909, No 279, § 5, subd (e), of the home-rule act, as amended (CL 1948, § 117.5 [Stat Ann 1949 Rev § 5.2084]), provided as follows:

"No city shall have power:   *   *   *

"(e) To   *   *   *   authorize any issue of bonds except bonds issued in anticipation of the collection of taxes actually levied and uncollected or for which an appropriation has been made, bonds which the city is authorized by its charter to issue as part of its budget system, to an amount which in any year together with taxes levied for the same year, will not exceed the limit of taxation authorized by law, special assessment bonds, bonds for the city's portion of local improvements, refunding bonds, and emergency bonds as defined by this act, unless approved by 3/5 of the electors voting thereon at any general or special election."

Section 5, subd (e), *supra,* was last amended by PA 1923, No 119.

PA 1909, No 279, § 5, subd (g) of the home-rule act, *supra,* as amended by PA 1941, No 60, provides:

"No bonds, whether authorized under the provisions of this act or any other act, except refunding bonds and revenue bonds which any municipality has heretofore legally contracted to issue and deliver, shall be authorized by any resolution or ordinance of the legislative body of such city unless notice thereof is published in a newspaper of general circulation in the city at least 30 days prior to the adoption of any such resolution or ordinance, within which period a petition may be filed with the legislative body signed by not less than 10 per cent. of the registered electors in such city, in which event said legislative body shall submit the question of the issuance of such bonds to the electors of such city, at any regular or special election in such city, and such bonds shall not be authorized and issued unless a 3/5 vote of the electors voting thereon shall vote in favor thereof."

These 2 sections of the home-rule act became binding on Port Huron, a home-rule city. Defendant contends that the failure to give notice of the resolution or submit it to a vote of the electorate for approval by 3/5 of them is fatal to its validity and, therefore, the bond issue authorized by the resolution is illegal and void.

Plaintiffs proceeded under and rely on PA 1927, No 320 (CL 1948, § 123.241 *et seq.* [Stat Ann 1949 Rev § 5.2661 *et seq.*]), the title to which act provides:

"An act authorizing counties, cities and villages, either individually or jointly by agreement, to provide a sanitary means of disposing of the garbage, sewage and night soil thereof; to charge owners or occupants of premises therefor; to borrow money and issue bonds to own, acquire, construct, equip, operate and maintain intercepting sewers and sewage disposal plants, and garbage disposal plants, and to repeal Act No 2 of the extra session of 1926, and any other acts or parts of acts inconsistent herewith."

Plaintiffs call particular attention to Act No 320, § 2, *supra* (CL 1948, § 123.242), which, in referring to general obligation bonds to finance sewage-disposal plants, provides as follows:

"No bonds shall be issued as general obligations of the governmental agencies or municipalities except upon a 3/5 affirmative vote of the qualified electors of such governmental agencies or municipalities *and except as hereinafter provided,* not in excess of 3 per cent. of the assessed valuation of the real and personal property of such governmental agencies or municipalities as shown by the last preceding tax roll. No bonds shall be issued as faith and credit bonds or mortgage bonds of the utility except upon a 3/5 affirmative vote of the legislative body of such

governmental agency or municipality." (Italics supplied.)

PA 1927, No 320, §§ 7 and 8, *supra* (CL 1948, §§ 123.247 and 123.248), contain the exceptions on which plaintiffs rely. They are as follows:

"Sec. 7. Whenever a court of competent jurisdiction in this State shall have ordered the installation of a sewage- or garbage-disposal system in any of the governmental agencies or municipalities herein mentioned, and the plans therefor shall have been prepared, and approved by the State commissioner of health, the legislative body or the respective legislative bodies thereof shall have authority to issue and sell the necessary bonds for the construction and installation thereof, including the disposal plant, and such intercepting and other sewers as may be necessary to permit the effective operation of such system; such bonds to draw interest at not to exceed 6 per cent. per annum, and payable in not to exceed 30 years from the date of issuance; the legislative body or the respective legislative bodies to determine the denomination of said bonds and the date, time and manner of payment. The amount of such bonds either issued or outstanding shall not be included in the amount of bonds which the said governmental agencies or municipalities may be authorized to issue under any statutes of this State or charters. Governmental agencies or municipalities issuing bonds hereunder in excess of the limit of the authorized bonded indebtedness fixed by statutes or charters, the principal and interest of which are not to be paid out of funds created from service charge, as hereinbefore provided, may raise such a sum annually by taxation as the legislative body or respective legislative bodies may deem necessary to pay interest on such bonds, and to create a sinking fund to pay the principal thereof as it falls due. Such annual amount may be in excess of the authorized annual tax rate fixed by the statutes or charters. Except as otherwise provided in this act, all bonds

issued hereunder shall be issued and sold in conformity to the provisions of Act No 273 of the Public Acts of 1925 or as it may be hereafter amended." CL 1948, § 123.247 (Stat Ann 1949 Rev § 5.2667).

(PA 1925, No 273, referred to at the end of section 7, *supra,* has been repealed and superseded by PA 1943, No 202 [CL 1948, § 131.1 *et seq.* (Stat Ann 1949 Rev § 5.3188[1] *et seq.*)], also known as the municipal finance act. This, however, does not affect the issues in the instant case.)

"Sec. 8. Whenever an order shall have been made by any court of competent jurisdiction, as hereinbefore provided, the fact that such order was issued shall be recited in the official minutes of the legislative body or the respective legislative bodies. The said body or bodies shall thereupon require that plans and specifications be prepared of such sewage- or garbage-disposal system, including the necessary storm and sanitary sewers, which plans when submitted and approved by the legislative body or respective legislative bodies shall be submitted thereafter to the State commissioner of health for his approval. If such plans are so approved, the legislative body or respective legislative bodies shall thereupon authorize the issuance and sale of the necessary bonds to establish the proposed system." CL 1948, § 123.248 (Stat Ann § 5.2668).

Section 2 of the same act also provides that:

"Governmental agencies or municipalities may issue faith and credit bonds or mortgage bonds therefor beyond the general limits of the bonded indebtedness prescribed by law except as hereinafter provided."

The quoted provisions of PA 1909, No 279, as amended (home-rule act, *supra*), requiring the approval of a bond issue by 3/5 of the electors and notice, differ from the provisions quoted from PA 1927, No 320, a special act, which does not re-

quire such notice or approval. Section 7 of Act No 320 (CL 1948, § 123.247) distinctly provides for the raising of sufficient sums annually by general taxation for the payment of principal and interest on bonds which are not to be paid from sums received. Section 8 of Act No 320, *supra* (CL 1948, § 123.248), provides that whenever an order shall have been made by any court of competent jurisdiction the fact that such order was issued shall be recited in the official minutes of the legislative body and the approval of the plans by the commissioner of health, the issuance and sale of the necessary bonds to establish the proposed system. Plaintiffs strictly complied with the provisions of Act No 320, *supra,* in adopting the resolution. The bonds to be issued thereunder now only require the countersignature of defendant so as to become legal.

Section 5, subd (g), of the home-rule act in its amended form was passed in 1941 (PA 1941, No 60), and this was subsequent to the enactment of PA 1927, No 320, but which act we do not believe was repealed by implication. PA 1927, No 320, *supra,* is a special act that applies to a situation as is presented in the instant case.

In *Boyer-Campbell Co.* v. *Fry,* 271 Mich 282, 297 (98 ALR 827), we said:

" 'Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice; to favor public convenience and to oppose all prejudice to public interests.' 2 Lewis' Sutherland, Statutory Construction (2d ed), § 490."

A special statute shall be given effect as an exception to the general statute in order to carry out the legislative intent. *Board of Education* v. *Blondell,* 251 Mich 528. When a general intention is expressed and also a particular intention which is in-

compatible with the general one, the particular intention shall be considered as an exception to the general one. *Attorney General, ex rel. Owen, v. Joyce,* 233 Mich 619; *Heims* v. *School District No. 6 of Davison Township,* 253 Mich 248, and cases therein cited. Also, see *Reed* v. *Secretary of State,* 327 Mich 108. In *Attorney General, ex rel. Owen, v. Joyce, supra,* we held that the special act providing that the board of supervisors might fill vacancies in the office of road commissioner was not repealed by a later general act which provides for the filling of vacancies and appointments of county offices by the probate court, county clerk and prosecuting attorney, the later act not containing a repealing clause. We quoted the following:

"An act will not be construed to repeal or modify earlier legislation, if, giving such effect to the act, an apparent purpose would appear to disturb an established system of written law, covering a vital field in our system of government." 25 RCL, p 919.

"The principle that the law does not favor repeals by implication is of especial application in the case of an important public statute of long standing, which should be shown to be repealed either expressly, or by a strong and necessary implication." 25 RCL, p 920. * * *

" 'When a general intention is expressed, and also a particular intention which is incompatible with the general one, the particular intention shall be considered an exception to the general one.' 1 Lewis' Sutherland, Statutory Construction, p 532, § 275."

The action of plaintiffs was in strict accord with our peremptory order for the installation of a sewage-treatment system in Port Huron. The proposed bond issue was not to raise money for ordinary municipal purposes or improvements, but to carry out the order of this Court, and prevent defendant from further polluting public streams and endanger-

ing the health and comfort not only of its own inhabitants but also of all others in any way affected by the pollution of the waters by the filth from the Port Huron sewers. This no longer created solely a problem of Port Huron but one of the State and this may have been the reason for enactment of Act No 320, *supra,* sections of which we have quoted. The order was for the protection of the people of the State of Michigan. It transcended local purposes.

Claims of defendant that notice and a vote of the electors of Port Huron were necessary are fully answered by sections 7 and 8 of PA 1927, No 320, *supra.* The city of Port Huron was bound to carry out the order of this Court, which confirmed the previous order of the stream control commission. There was neither necessity, occasion, nor any reason to publish the resolution authorizing the issuance of the bonds, nor, as previously stated, did it require the vote of 3/5 of the electors. There is no fraud claimed on the part of plaintiffs. Defendant argues that when the revenue bond ordinance was adopted in 1945, the people of Port Huron did not exercise the right of referendum because they were fully satisfied with the issuance of revenue bonds for sewage- and garbage-disposal plant; that they knew of their rights to defeat such a measure at the polls because during the same year it defeated a proposal to issue bonds for the construction of a municipal water-filtration plant, a municipal improvement not provided for in Act No 320, *supra.* The question of a bond issue to furnish funds to build the disposal plant so as to stop the pollution of public streams was not one that had to be submitted to the electors.

Act No 320, § 9, *supra,* provides:

"The authority hereby given shall be in addition to and not in derogation of any power existing in any of the counties, cities or villages under any

statutory or charter provisions which they may now have or may hereafter adopt."

Defendant claims that this provision enables the city to reject or limit the power granted by Act No 320, *supra*. The act is a direct grant of power given to the city irrespective of the provisions of its charter. In providing that the authority shall be in addition to the powers in the charter, it authorizes the city to issue bonds in accordance with the act and does not prohibit or limit the doing of anything authorized by Act No 320, *supra*.

Subsequent to the 1945 decree in *People, ex rel. Stream Control Commission*, v. *City of Port Huron,* 305 Mich 153, the advantages of adding a garbage-disposal system to the contemplated sewage-disposal system was discussed at public hearing in Port Huron. The economies, advantages and propriety of such joint disposal systems seemed apparent. The garbage-disposal system if built independently would cost $283,000, but if constructed in connection with the sewage-disposal system, it would only entail an additional outlay of $172,000 or 10¾ per cent. of the $1,600,000 raised through the revenue bonds issued and sold in 1945. The ordinance providing for the revenue bonds distinctly stated that the proceeds were to be used for both sewage and garbage disposal. The interest and principal of the revenue bonds were to be paid from the income derived from charges made to the respective property owners in accordance with their use of the sewage system and also from householders and others who were to be charged a certain sum for hauling away and disposing of the garbage that did not pass through the sewers. The amount of these charges are set forth in the ordinance providing for the $1,600,000 revenue bonds and stating that they were to be self-liquidating. Defendant correctly asserts that in the

previous cases the question of garbage disposal was not before us.  PA 1927, No 320, *supra,* however, does provide for both sewage and garbage disposal. The inclusion of a garbage-disposal system under the ordinances of 1945 was not improper.  Evidently it was believed that sufficient funds would be derived from the revenue bonds issued so as to comply with the order of the stream control commission as approved by this Court, and also to construct a garbage-disposal system.  The ordinance providing the revenue bonds constitutes a contract with the holders of the bonds and the city of Port Huron so that the latter must use the proceeds from the bonds to build both a sewage and a garbage system and to pay the bonds from the proceeds of charges collected from the users of the sewage and garbage system.

Defendant contends that even though the resolution in 1949 providing for the general obligation bonds to raise funds so as to comply with the order of the stream control commission and this Court and to immediately build a sewage-disposal system, there was no order of the stream control commission or of this Court to build a garbage-disposal plant.  Inasmuch as the garbage-disposal system was to be built from the proceeds of the revenue bonds as provided in ordinance of 1945, the most that defendant can ask is that moneys for that purpose be allocated from the proceeds of the revenue bonds of 1945 and that no part of the proceeds from the general obligation bonds be so used.  This involves simple bookkeeping and does not affect the validity of the general obligation bonds of 1949, the proceeds of which will be sufficient to complete the sewage-disposal system when added to the balance of the proceeds from the revenue bond issue after provision is made for the garbage-disposal system.

Defendant, however, claims that inasmuch as the ordinance of 1945, providing for the revenue bonds,

provided that the city reserved the right to issue additional revenue bonds to defray the cost for the full completion of the sewer and garbage systems, as well as for extensions and permanent improvements, that this constituted an absolute binding contract with the holders of revenue bonds to issue only additional bonds. We do not construe the ordinance to have any such meaning. It simply reserved the right to issue further revenue bonds but did not limit plaintiffs to this method to pay additional costs. Whether to issue revenue bonds or general obligation bonds to defray such additional costs became a legislative matter to be decided by plaintiffs. They assert that it might require exorbitant charges to the users of the sewage and garbage systems if they were obliged to pay an increase in charges so as to provide a sufficient amount for the interest and serial-retirement payments on additional revenue bonds, had they been issued. There may have been other sound financial reasons not set forth in the record that appealed to the plaintiffs.

Defendant further contends that the total amount required may not be paid partly from the proceeds from the revenue bond issue and partly from sums to be realized from the general obligation bonds. This can be done. See *Ritchie* v. *Harrisville City Council,* 291 Mich 415 (32 PUR NS 254).

Defendant further claims that when the ordinance of 1945 was adopted the electors could have asked for a referendum under the charter but they did not do so, as they understood that the entire interest and principal of the cost of the sewer and garbage systems was to be paid from revenues derived from charges to the users of the systems, as hereinbefore noted. Defendant further contends that good faith on the part of plaintiffs required them to raise the extra amounts through additional revenue bonds and that the electors of Port Huron were legally

entitled to an opportunity, if they so desired, to approve or reject the proposition through a referendum provided for in the charter. Plaintiffs assert that there is no merit to this latter contention for they were legally bound to carry out the order of this Court and they might have faced an impasse if the electors had rejected a new ordinance or resolution to issue additional bonds. We certainly could not have issued a contempt order against the entire electorate of Port Huron for failure to carry out our peremptory order to complete the sewage-disposal system by October 1, 1950. It might have seemed advisable to the mayor and members of the city council of Port Huron in 1945 to defray further costs through issuance of additional revenue bonds, but we find no contract to pay such additional cost solely from funds obtained through additional revenue bonds. There was no contract or obligation on the part of plaintiffs in 1949 to follow what in 1945 might have seemed best to their predecessors in office. Plaintiffs were not estopped by any contract or conduct on the part of themselves or their predecessors to limit further financing to revenue bonds.

The further claim is made by defendant that inasmuch as Act No 320, § 2, *supra,* further provides that such intercepting sewers, et cetera, should be considered a public utility within the meaning of any constitutional or statutory provision for the purpose of acquiring, purchasing, owning, operating, constructing, equipping and maintaining such intercepting sewers, pumping stations, sewage-disposal plant and system and garbage-disposal plant and system, therefore, as a public utility, it is governed by Constitution of the State of Michigan (1908), art 8, § 25, which provides:

"Nor shall any city or village acquire any public utility or grant any public utility franchise which is not subject to revocation at the will of the city or

village, unless such proposition shall have first received the affirmative vote of three-fifths of the electors of such city or village voting thereon at a regular or special municipal election."

In *Holland* v. *Clerk of Garden City,* 299 Mich 465, we held that definition of public utility in section 25, *supra,* was limited in meaning to section 23 of article 8 which refers to public utilities for supplying water, light, heat, power and transportation to the municipality and the inhabitants thereof, and that a vote of the electors is not required when a city desires to provide sewers which are authorized by article 8, § 22, of the Constitution which permits cities to acquire, own, establish and maintain all works which involve the public health or safety.

The further question is raised as to whether defendant may lawfully levy a tax for the payment of the general obligation bonds in question even though the tax would be in excess of the tax limitation provided by the city charter. There is nothing in the record to indicate that such a tax would be in excess of the tax limitation provided by the city charter, but even assuming that such would be the case, a home-rule city may levy such a tax for the payment of outstanding bonds even though such tax would be in excess of the city charter tax limitation. See *City of Hazel Park* v. *Municipal Finance Commission,* 317 Mich 582, and the cases therein cited, where the question has been fully discussed and squarely ruled upon.

The Constitution of this State vests in the legislature the complete and unrestricted power to limit the rate of taxation of cities for municipal purposes and their powers of borrowing money and contracting debts.* The legislature, in PA 1927, No 320, § 7, as amended, *supra,* distinctly provides that the city may levy annually such tax as may be necessary

---

* See Const 1908, art 8, § 20.—Reporter.

to pay interest and principal on the bonds authorized and that such annual amount may be in excess of the annual tax fixed by statute or charter. See *Harsha* v. *City of Detroit,* 261 Mich 586, 592 (90 ALR 853), wherein we held that:

"The legislature may regulate the amount of municipal indebtedness and the rate of taxation of cities. It is expressly authorized by article 8, § 20, of the Constitution so to do. Its powers are plenary. It may increase or decrease the limit of bonded indebtedness and the rate of taxation for municipal purposes, subject to the prohibition in the Constitution of this State and of the United States that such legislation shall not operate directly upon contracts so as to impair their obligation by abrogating or lessening the means of their enforcement. *Wolff* v. *New Orleans,* 103 US 358 (26 L ed 395). There is no constitutional provision against changing the limit of bonded indebtedness or limiting the rate of taxation for municipal purposes which in cities under the home-rule act obtained when plaintiff acquired her bond."

Defendant contends further that the resolution of September 26, 1949, is an illegal and ineffectual attempt to amend the ordinance of 1945. The resolution is complete in itself and neither repeals nor amends the previous ordinance. The ordinance of 1945 remains in full force and effect. The resolution of 1949 is also complete in itself. For this reason, we need not discuss the question of repeal or amendment of the first ordinance by the resolution.

The further claim is made that PA 1927, No 320, as amended, *supra,* or at least sections 7 and 8 of said act, is unconstitutional and void for the reason that the latter 2 sections embrace provisions and objects not expressed in the title of the act and thus violate Constitution of Michigan (1908), art 5, § 21. The title to Act No 320, hereinbefore set

forth in full, states that one of its purposes is to enable municipalities to provide for disposal of sewage and garbage, to borrow money and to acquire disposal plants. The title is complete. It need not set forth all of the details necessary to carry out the act; the main purposes are set out in the title.

Defendant makes some other contentions which we have carefully considered. We find them of no merit and not entitled to further discussion. We limit ourselves to the main and salient points raised, all of which we have covered.

The writ of mandamus will issue ordering the defendant city treasurer to countersign the bonds as prayed for. A public question being involved, no costs will be allowed.

BOYLES, C. J., and REID, NORTH, DETHMERS, CARR, BUSHNELL, and SHARPE, JJ., concurred.