*In re* CARPENTER'S ESTATE.

AVERY *v.* WOODRUFF.

1. PHYSICIANS AND SURGEONS—DENTISTS—COMPENSATION.
Under section 7 of Act No. 183, Pub. Acts 1913 (2 Comp. Laws 1915, § 6754), providing that any person shall be said to be practicing dentistry within the meaning of that act who shall treat disease or lesions of the human teeth or jaws, a regularly qualified dentist who administers

196—Mich.—36.

treatment to a patient for an incurable cancer of the mouth, using cocaine and other drugs, under the direction of duly qualified physicians, in which administration some skill was required, may recover for such services either as services of a nurse or as services of a qualified dentist.

2. SAME.

A regularly qualified dentist, in treating a patient for an incurable cancer of the mouth, under the direction of duly qualified physicians, is not practicing medicine within the meaning of Act No. 237, Pub. Acts 1899, nor of Act No. 368, Pub. Acts 1913 (2 Comp. Laws 1915, §§ 6724-6734).[1]

Error to Livingston; Miner, J. Submitted April 18, 1917. (Docket No. 88.) Decided May 31, 1917. Rehearing denied December 28, 1917.

E. L. Avery presented a claim against the estate of Henrietta Carpenter, deceased, for services rendered. The claim was disallowed in the probate court, and claimant appealed to the circuit court. Judgment for claimant. Defendant Russell Woodruff, executor, brings error. Affirmed.

*W. E. Robb* and *R. D. Roche*, for appellant.

*Louis E. Howlett*, for appellee.

Claimant, a duly qualified dentist, practicing his profession in the city of Howell, filed a claim against the estate of Henrietta Carpenter as follows:

Bill of Particulars.
                    Howell, Mich., Nov. 15, 1915.
    Mrs. Azel Carpenter to E. L. Avery, Dr.,
                    Dentist.
To treating and cleansing cancer of the mouth
    three times a day from February 12, 1915, to
    April 30, 1915, 77 days, at $2.00 per day ...... $154.00

[1]On application of statute regulating practice of medicine, to persons giving special kinds of treatment, see notes in 3 L. R. A. (N. S.) 763; 24 L. R. A. (N. S.) 103; 25 L. R. A. (N. S.) 1297; 33 L. R. A. (N. S.) 179.

To treating and cleansing cancer four to six
  times a day from May 1, 1915, to July 3, 1915,
  64 days, at $3.00 per day.................... $192.00
April 14, 1915.  Cocaine and Antiseptic.........    4.00
June  1, 1915.  Cocaine and Antiseptic.........    4.00
June 23, 1915.  Cocaine and Antiseptic.........    4.00

    Total  ................................. $358.00
Feb.   28, 1915.  By cash.................$10
March  9,    "      "    "    ................. 10
March 20,    "      "    "    .................  5
March 24,    "      "    "    .................  5
April  1,    "      "    "    .................  5
April 10,    "      "    "    .................  5
April 22,    "      "    "    .................  5
April 27,    "      "    "    ................. 10
May   26,    "      "    "    ................. 25
May   15,    "      "    "    ................. 25
May   28,    "      "    "    ................. 45
June   9,    "      "    "    ...'............. 20
June  18,    "      "    "    ................. 25
June  30,    "      "    "    ................. 25
                                           ——   $220.00

    Balance due ........................... $138.00

It appears from the record that the decedent had suffered for some months from an incurable cancer of the mouth. She committed suicide on July 3, 1915, claimant having treated her from February 12, 1915, to the day of her death. During this period of treatment defendant cleansed and treated the cancer from three to six times each day, and removed therefrom from time to time pieces of bone. He administered to the decedent cocaine, morphine, and other drugs. Between March 23, 1915, and July 3, 1915, Dr. Huntington, a regular practicing physician and surgeon, made frequent visits to decedent. He knew from decedent and claimant that claimant was cleansing and caring for the cancer, and himself instructed claimant to administer antiseptic and anæsthetic drugs. No question is raised in this record as to the value of claimant's services. At the conclusion of claimant's

case counsel for the estate made a motion for a directed verdict upon the ground that the services rendered by claimant were rendered for the treatment of a cancer by a man not shown to be legally qualified to practice medicine in the State of Michigan; that a treatment of cancer by a dentist is a treatment in violation of the law. Whereupon the court said to Mr. Howlett, counsel for claimant:

"*The Court:* I don't suppose, Mr. Howlett, you claim he is a doctor?

"*Mr. Howlett:* Oh, no.

"*The Court:* Simply he was performing services as a private citizen?

"*Mr. Howlett:* Private citizen or nurse, under the direction of Dr. Sigler and Dr. Huntington. We object to the motion being granted.

"*Mr. Roche* (counsel for defendant) : I will say farther he has not shown himself to be a nurse who is authorized or empowered by the statute.

"*The Court:* There is no statute on that in this State.

"*Mr. Roche:* I understand. I wanted the motion on the record that any services rendered in furtherance of a contract, either express or implied, rendered in violation of the law are void.

"*The Court:* The motion will be denied."

The court thereupon submitted the case to the jury, leaving them to determine the reasonable value of the claimant's services. The jury returned a verdict in favor of the claimant in the sum of $138, the full amount claimed.

BROOKE, J. (*after stating the facts*). Counsel for defendant's estate says:

"The only question of importance involved in this case is whether the claimant in doing what he did for the decedent was engaged in the practice of medicine contrary to the provisions of Act No. 237 of the Public Acts of 1899 as amended (2 Comp. Laws 1915, §§ 6724-6734)."

The record shows beyond question that the treatments administered by the claimant were so administered from the very first under the direction of a duly qualified physician, first under Dr. Sigler, and later under Dr. Huntington. It further shows that such treatments were necessarily administered from three to six times each day; the lesion in the jaw being extremely painful and emitting a discharge highly offensive in odor. It further appears that in the administering of said treatments some skill was required. We are of opinion that claimant was entitled to recover upon either of two theories: *First*, that the services rendered were those of an ordinary nurse under the direction of a competent and duly qualified surgeon; and, *second*, that they were rendered by claimant as a duly qualified dentist under the provisions of Act No. 183, Pub. Acts 1913, section 7 (2 Comp. Laws 1915, § 6754) of which provides:

"Any person shall be said to be practicing dentistry within the meaning of this act * * * who shall * * * treat diseases or lesions of the human teeth or jaws, * * * or who shall for a fee, salary, or other award paid or to be paid, * * * treat diseases or lesions of the human teeth or jaws."

The treatments administered by the claimant would clearly fall within the definition of the practice of dentistry contained in the statute.

We are of opinion that claimant in rendering the services for which claim is made was not practicing medicine within the meaning of Act No. 237, Pub. Acts 1899, nor of Act No. 368, Pub. Acts 1913 (2 Comp. Laws 1915, §§ 6724-6734).

We find no reversible error in this record, and the judgment will stand affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and FELLOWS, JJ., concurred.