HILL v HIGHLAND PARK GENERAL HOSPITAL

OPINION OF THE COURT

1. PHYSICIANS AND SURGEONS—DENTISTS—NONEMERGENCY TREAT-
   MENTS—STATUTES—OVERLAPPING PROCEDURES.

   The surgical repair of a fractured jaw by a physician in a
   nonemergency situation does not violate the dental practice
   act; where the functions covered by the Medical Practice Act
   and the dental practice act overlap, such overlapping proce-
   dures may be performed by either a physician or a dentist
   (MCLA 338.201 *et seq.*, 338.1801 *et seq.*; MSA 14.629[1] *et seq.*,
   14.542[1] *et seq.*).

2. STATUTES—CONSTRUCTION—ABSURD RESULTS.

   Statutes are to be construed to avoid absurd results and in the
   way most beneficial to the public.

3. PHYSICIANS AND SURGEONS—MALPRACTICE SUITS—EVIDENCE—ORAL
   SURGEON'S STANDARDS—ORAL SURGEON AVAILABILITY.

   A plaintiff claiming that a medical doctor committed malpractice
   in performing jaw surgery may present as evidence of the
   malpractice the techniques of oral surgeons which might have
   prevented his injuries or may raise the issue of whether the
   physician should have known of the availability and expertise
   of oral surgeons and failed to advise and explain to the patient
   accordingly.

4. APPEAL AND ERROR—TRIAL—OBJECTIONS—PREJUDICIAL REMARKS—
   PRESERVING QUESTION.

   A plaintiff who fails to object or request cautionary instructions

REFERENCES FOR POINTS IN HEADNOTES

[1, 5, 6] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 86,
117.

[2] 73 Am Jur 2d, Statutes §§ 265, 306, 315.

[3] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 114–
117, 137.

[4] 5 Am Jur 2d, Appeal and Error § 553 *et seq.*

75 Am Jur 2d, Trial § 906.

to allegedly prejudicial examination or remarks by defense counsel at trial has not preserved the issue for appeal.

CONCURRENCE BY BRONSON, J.

5. PHYSICIANS AND SURGEONS—DENTAL PRACTICE—STATUTES—RESTRICTED PROCEDURES.

*Cases could arise in which a licensed physician would violate the dental practice act by performing procedures which are restricted to licensed dentists under that act.*

6. PHYSICIANS AND SURGEONS—DENTAL PRACTICE—TEMPORARY EMERGENCY CARE—STATUTE—APPLICABILITY.

*The specific exemption in the dental practice act for temporary emergency care rendered by a physician is applicable only where the procedure may not legally be performed by a physician who is not a licensed dentist; physicians who perform nonemergency procedures do not violate the dental practice act merely because the procedure could also be performed by a dentist.*

Appeal from Wayne, Roland L. Olzark, J. Submitted June 9, 1977, at Detroit. (Docket No. 28161.) Decided December 22, 1977.

Complaint by Ralph L. Hill against Highland Park General Hospital seeking damages for medical malpractice. Judgment for defendant. Plaintiff appeals and defendant cross-appeals. Motion to intervene as amicus curiae by the Michigan Academy of Plastic Surgeons and the Society of Oral Surgeons granted. Affirmed in part, reversed in part.

*Zeff & Zeff* (by *Nathan E. Shur*), for plaintiff.

*Kitch & Suhrheinrich, P. C.* (by *Gregory G. Drutchas*), for defendant.

Amicus Curiae: *Beer, Boltz & Bennia* (by *Sandra G. Silver*), for the Society of Oral Surgeons.

*Cooper, Baskin & Feldstein,* for the Michigan
Academy of Plastic Surgeons.

Before: J. H. GILLIS, P. J., and BRONSON and
R. E. ROBINSON,* JJ.

J. H. GILLIS, P. J. In the late evening of July 12,
1966, plaintiff was assaulted and injured. At ap-
proximately 2:30 a.m. of July 13, 1966, he was
admitted to defendant hospital. Plaintiff was diag-
nosed as having a broken jaw. Ten days after his
admittance to the hospital, plaintiff was operated
upon by Dr. Newby, a plastic surgeon. This ten-day
wait was apparently due to infection and swelling.
During the operation, Dr. Newby drove a steel pin
through plaintiff's jaw, wired it and removed a
tooth that was on the fracture line of the jaw.

Plaintiff was discharged from defendant hospital
about three days after the operation with instruc-
tions to see Dr. Newby at his private office for
removal of the stitches in six days. Plaintiff went
to see Dr. Newby as scheduled, at which time Dr.
Newby removed the stitches and told plaintiff to
return for another examination in six more days.
Plaintiff did not keep the second appointment.
Instead, he waited nine days and went to Veterans
Administration Hospital. An infection had devel-
oped requiring another operation to remove a
portion of the jaw bone.

On April 10, 1968, plaintiff commenced a mal-
practice action against defendant alleging im-
proper care during the ten days between his ad-
mittance and the operation and also that in the
course of the operation the pin was placed in such
a manner so as to sever the nerve in plaintiff's jaw

---

* Circuit judge, sitting on the Court of Appeals by assignment.

and interfere with the blood supply causing the infection that necessitated the second operation and a loss of feeling in the facial area.

Trial commenced on April 27, 1971. On April 28, 1971, defendant moved for, and was granted a mistrial. On September 9, 1974, the second trial began. The trial court ruled that the repair of a jaw fracture is within the proscription of the dental practice act and that a plastic surgeon who performs jaw surgery violates the statute. MCLA 338.201 *et seq.;* MSA 14.629(1) *et seq.* Accordingly the trial court instructed the jury that Dr. Newby was negligent *per se* in performing the operation in question leaving the issue of proximate cause to be decided by the jury. The jury returned a verdict of no cause of action in favor of defendant. Plaintiff appeals as of right raising three issues. Defendant cross-appeals raising one additional issue. We will address the cross-appeal first.

Defendant raises the following issue on cross-appeal: Is the surgical repair of a fractured jaw by a physician in a nonemergency situation a violation of the dental practice act?

The Michigan Academy of Plastic Surgeons (hereinafter referred to as Plastic Surgeons) and the Society of Oral Surgeons (hereinafter referred to as Oral Surgeons) have filed amicus curiae briefs in support of their respective positions.

Section 4 of the dental practice act makes it "unlawful for any person to practice or engage in the practice of dentistry or dental surgery in any of its branches", other than licensed dentists unless the particular procedure or practice comes within an exception provided in the dental practice act. MCLA 338.204; MSA 14.629(4).

Section 12 of the dental practice act states that a person is practicing dentistry when it is shown:

"(1) That he uses a dental degree, designation, card, device, directory, poster, sign, or other means whereby he represents himself, or permits himself to be represented as being able to diagnose, treat, prescribe, or operate for any disease, pain, deformity, deficiency, injury or physical condition of the human tooth, teeth, alveolar process, gums or jaws, or their dependent tissues.

"(2) That he is a manager, proprietor, operator, or conductor of a place where dental operations are performed.

"(3) That he performs dental operations of any kind gratuitously, or for a fee, gift, compensation, or reward, paid or to be paid to himself, to another person, or agency.

"(4) That he, or his employees, use a Roentgen or X-ray machine for dental treatment, radiograms, or for dental diagnostic purposes.

"(5) That he extracts a human tooth or teeth, or corrects or attempts to correct malpositions or deformities of the human teeth or jaws, or repairs or fills cavities in human teeth.

"(6) That he offers and undertakes, by any means or method, to diagnose, treat, or remove stains or accretions from human teeth or jaws.

"(7) That he conducts a physical evaluation, uses or administers anesthetics in the treatment of dental, or oral diseases, or in any preparation incident to a dental operation of any kind or character.

"(8) That he takes impressions of the human tooth, teeth, jaws, or performs any phase of any operation incident to the replacement of a part of a tooth, teeth, or associated tissues.

"(9) That he examines clinical material in a dental office or contracts or agrees to render or perform, either personally or through another, a dental service or services.

"(10) That he performs any operation included in the curricula of recognized dental schools or colleges." MCLA 338.212; MSA 14.629(12).

Section 13 of the dental practice act provides

that "[t]he rendering of temporary supportive relief in emergency cases in the practice of his profession by a physician or surgeon" is an exception to the dental practice act. MCLA 338.213(1); MSA 14.629(13)(1).

Section 2 of the Medical Practice Act, MCLA 338.1801 *et seq.;* MSA 14.542(1) *et seq.,* defines the practice of medicine to be:

"[T]o diagnose, treat, prevent, cure, or relieve a human disease, ailment, defect, complaint, or other condition, whether physical or mental, by attendance or advice, or by a device, diagnostic test, or other means, or to offer, undertake, attempt to do, or hold oneself out as able to do, any of these acts." MCLA 338.1802(g); MSA 14.542(2)(g).

Dr. Newby is a licensed physician and not a licensed dentist. The Oral Surgeons contend that the jaw surgery which he performed in the instant case was nonemergency dental surgery in violation of the dental practice act. In support of their argument, the oral surgeons submit that the Medical Practice Act provides a broad definition of the practice of medicine and that the dental practice act provides a specific definition for the practice of dentistry and that in order to give full force and effect to both statutes, under the rules of statutory construction, the specific definition of the dental practice act controls. *Mayor of Port Huron v City Treasurer of Port Huron,* 328 Mich 99; 43 NW2d 77 (1950), *Attorney General ex rel Owen v Joyce,* 233 Mich 619; 207 NW 863 (1926), *McKenna v Chevrolet-Saginaw Grey Iron Foundry Div, General Motors Corp,* 63 Mich App 365; 234 NW2d 526 (1975).

The Oral Surgeons also argue that oral surgery is the one health care field specifically trained to

treat the human jaw and that jaw surgery should be measured against the standards as set by oral surgeons. The Oral Surgeons further contend that a physician has a duty to inform a patient, who is suffering a jaw related problem, of the availability of an oral surgeon as a specialist for such treatment.

The Plastic Surgeons argue that the surgery performed by Dr. Newby was authorized under the Medical Practice Act and that the dental practice act was not intended to prevent physicians from performing functions that they find to be necessary even though those functions may also be performed by a dentist.

In interpreting a statute or statutes, the Court must attempt to ascertain the intent of the Legislature, considering the purpose of the statute in question. Statutes are to be construed so as to avoid absurd results and in the way most beneficial to the public. See generally, *State Highway Commissioner v Detroit,* 331 Mich 337; 49 NW2d 318 (1951), *Mayor of Port Huron v City Treasurer of Port Huron, supra, Webster v Rotary Electric Steel Co,* 321 Mich 526; 33 NW2d 69 (1948), *Rathbun v State,* 284 Mich 521; 280 NW 35 (1938), *Smith v City Commission of Grand Rapids,* 281 Mich 235; 274 NW 776 (1937).

The purpose of statutes regulating health care professions is to safeguard the public health and protect the public from incompetence, deception and fraud. *People v Carroll,* 274 Mich 451; 264 NW 861 (1936), 70 CJS, Physicians and Surgeons, § 3.

The Oral Surgeons contend that dentists and doctors are practicing distinct and separate professions and that dentistry has become increasingly sophisticated over the years, presently requiring a

three-year residency program for oral surgeons to specially train them in jaw and other dental surgery. The rapid development of the dental profession and the educational programs, they argue, make oral surgeons more qualified than physicians to perform jaw surgery.

The Plastic Surgeons counter with an explanation of the specialized training and instruction that they receive and that they have been performing facial surgery for many years.

We do not dispute the fact that oral surgeons and plastic surgeons are trained and qualified to operate on the human jaw. We make no comment as to which, if either, is better equipped to perform that function. The dental practice act regulates dentistry in general. There are no provisions within the act for specific requirements relating to oral surgeons. Therefore, according to the act itself, a dentist who is not an oral surgeon and has not completed a residency program may perform the same functions as an oral surgeon. Likewise, the Medical Practice Act does not separately regulate the various specialties within the medical doctors' profession; meaning that statutorily there is no difference between a dermatologist and a neurosurgeon.

The Oral Surgeons direct us to the following language in *People v Blair,* 192 Mich 183; 158 NW 889 (1916), in support of their position of segregation:

"As we have before said, the several acts heretofore passed by the legislature regulating the practice of medicine and dentistry have indicated its intention of separating these professions and making them two distinct professions. By the medical act the legislature has conferred in general terms the right upon physicians and surgeons to practice surgery; but by the use of particular words in the dental act it has indicated its

intention of restricting the scope of that general right where it overlaps into the field of dental surgery, and therefore we must hold that physicians and surgeons have no right to practice dentistry except as permitted by the provisions of the act." 192 Mich at 187–188.

The statute involved in *Blair* specifically stated that physicians and surgeons may not extract teeth or advertise to perform dental operations of any type including the treatment of diseases or lesions in the human teeth or jaws. The defendant, a physician, had advertised that he would extract teeth for a fee, and was found guilty of violating the statute in question. In upholding the conviction, the Court held that the defendant's activity, *i.e.,* advertising dental work, was specifically prohibited by the statute and refused to accept defendant's argument that tooth extraction by a physician is permissible as minor medical surgery.

One year later, in the case of *In re Carpenter's Estate,* 196 Mich 561; 162 NW 963 (1917), the Court recognized an overlap in the dental and medical professions and held that either profession could perform functions within that area of overlap.

We decline to find that dentists and physicians perform mutually exclusive functions, and hold that where the two overlap, such overlapping procedures may be performed by either without violating the dental practice act. A competent surgeon trained in facial surgery cannot be said to be committing a fraud on the public in repairing a broken jaw. It is not the intent of the dental practice act to preclude physicians who are trained in facial surgery from performing such surgery merely because a dentist may also be trained in that area. It is possible that many rural communities do not have a need for oral surgeons but do

have resident medical surgeons. We do not find it to be in the public's interest to prohibit the surgeon from performing jaw surgery in favor of the dentist who has not participated in an oral surgery residency program. A prohibition of this sort would in our opinion be absurd and inconsistent with the purpose of health field regulations. Until such practices are specifically prohibited by the Legislature, we do not find it to be the intent of the dental practice act to prohibit physicians from performing surgery on or treatment of the jaw. See *Salas v Clements,* 399 Mich 103, 109; 247 NW2d 889 (1976), *Lincoln Park Detention Officers v Lincoln Park,* 76 Mich App 358; 256 NW2d 593 (1977).

This does not mean, however, that a plaintiff is prevented from presenting proof that a surgeon committed malpractice in performing jaw surgery. Our decision does not preclude as evidence of malpractice the techniques of oral surgeons, that such techniques would prevent certain injuries, and that a physician should have known of the availability and expertise of oral surgeons and failed to advise and explain to the patient accordingly.

We therefore hold that the trial court erred in ruling that Dr. Newby violated the dental practice act in performing surgery on plaintiff's jaw.

The remaining three issues raised by plaintiff in his appeal do not require extensive discussion. Plaintiff claims that comments and remarks on the part of defense counsel unduly prejudiced him. The record reveals that in each instance of alleged prejudicial examination or remark, plaintiff either failed to object or did not request a cautionary instruction. This error, if any, has not been preserved. *Marr v Saginaw County Agricultural Soci-*

*ety,* 364 Mich 373, 377; 110 NW2d 748 (1961), *Treece v Greyhound Bus Co,* 63 Mich App 63, 66; 234 NW2d 404 (1975).

In support of a motion for new trial, plaintiff submitted affidavits impeaching certain jurors. The jury had been polled at trial and all had assented to the verdict. The trial court denied the motion for a new trial. We find no error. *Consumers Power Co v Allegan State Bank,* 388 Mich 568, 572–574; 202 NW2d 295 (1972), *Metz v City of Bridgman,* 371 Mich 586, 590–592; 124 NW2d 741 (1963).

Plaintiff's third issue relating to Dr. Newby's testimony needs no discussion in light of the issue decided in the cross-appeal.

Affirmed in part, reversed in part. Costs to defendant.

R. E. ROBINSON, J., concurred.

BRONSON, J. *(concurring).* I concur in the result reached by my colleagues. I write separately to emphasize two points.

First, our decision should not be read as indicating that physicians can never violate the dental practice act. See, *e.g., People v Blair,* 192 Mich 183; 158 NW 889 (1916). Cases could arise in which a licensed physician violates that act by performing procedures which are restricted to licensed dentists. I would not attempt to delineate which procedures a licensed physician who is not a licensed dentist can legally perform, however. I would specifically limit our holding to the facts of the case before us and leave further distinctions to judicial and legislative development. This problem does seem to be particularly suited to legislative resolution.

Second, I would read the specific exemption in

the dental practice act for temporary emergency care rendered by a physician, MCLA 338.213(1); MSA 14.629(13)(1), as applicable only where the procedure may not legally be performed by a physician who is not a licensed dentist. This reading avoids the negative implication that physicians performing nonemergency procedures necessarily violate the dental practice act if the procedure could also be performed by a dentist.