NOLAN v DEPARTMENT OF LICENSING & REGULATION

Docket No. 80662. Submitted January 14, 1986, at Lansing. Decided May 19, 1986.

Donald E. Nolan was licensed as a physician's assistant under a statute which has been superseded by current provisions of the Public Health Code. Nolan obtained an interim license when the current provisions became effective. After his interim license expired, Nolan applied for a license under the current code provisions. The Task Force on Physician's Assistants of the Department of Licensing and Regulation issued an order denying Nolan's application. Nolan petitioned the Ingham Circuit Court for review. The circuit court, Carolyn Stell, J., affirmed the task force's decision. Nolan appealed. *Held:*

1. 1980 AACS, R 338.6304, Rule 304, which was promulgated under the current code provisions and specifies, in part, the requirements an applicant for licensure as a physician's assistant must meet, is consistent with the underlying intent of the Public Health Code provisions regarding physician's assistants, i.e., to safeguard the public health and protect the public from incompetence, deception and fraud.

2. While Rule 304 may cause petitioner inconvenience because it requires him to fulfill certain formal educational requirements to qualify for licensure, it is neither arbitrary nor capricious. The rule is rationally related to the legislative design to ensure that all individuals who practice as physician's assistants meet certain requirements.

3. The task force is not statutorily empowered to grant a limited license to petitioner or any other applicant.

4. The task force's denial of petitioner's license application did not deny petitioner's due process rights. Petitioner's license under the former statute did not vest a right to a continued

REFERENCES

Am Jur 2d, Administrative Law §§ 553 *et seq.,* 614 *et seq.*

Am Jur 2d, Constitutional Law §§ 804-859.

Am Jur 2d, Health §§ 12-16.

Right to attack validity of statute, ordinance, or regulation relating to occupational or professional license as affected by applying for, or securing, license. 65 ALR2d 660.

license. The state has discretion, founded on its police powers, to determine whether a person is properly qualified to continue holding a license.

Affirmed.

1. ADMINISTRATIVE LAW — AGENCY RULES — APPEAL.

Courts employ a threefold test to determine the validity of rules promulgated by an agency empowered to make rules: (1) whether the rule is within the matter covered by the enabling statute, (2) if so, whether it complies with the underlying legislative intent, and (3) whether it is arbitrary or capricious.

2. STATUTES — LEGISLATIVE INTENT — JUDICIAL CONSTRUCTION.

The primary rule in interpreting a statute is to ascertain and give effect to the Legislature's intent; all other rules of construction serve as guides to assist the courts in determining that intent with a greater degree of certainty.

3. HEALTH — HEALTH CARE PROFESSIONALS.

The purpose of the statutes regulating health care professionals is to safeguard the public health and protect the public from incompetence, deception, and fraud.

4. STATUTES — JUDICIAL CONSTRUCTION.

Courts are bound to construe statutes so as to give them validity and a reasonable construction; seeming inconsistencies in the various provisions of a statute should be reconciled, if possible, so as to arrive at a meaning which gives effect to all parts of the statute; a construction leading to an absurd consequence should be avoided.

5. COURTS — ADMINISTRATIVE LAW — STATUTES — JUDICIAL CONSTRUCTION.

Courts should give deference to an administrative agency's interpretation of a statute it is entrusted to enforce.

6. HEALTH — PUBLIC HEALTH CODE — PHYSICIAN'S ASSISTANTS — LICENSES.

An applicant for licensure as a physician's assistant, who is not a graduate of a program approved by the Task Force on Physician's Assistants or who is not licensed, certified, registered, approved, or otherwise legally recognized as a physician's assistant in another state, must comply with all educational, training, and clinical experience requirements contained in a rule of the Department of Licensing and Regulation (MCL 333.17062; MSA 14.15[17062]; 1980 AACS, R 338.6304).

7. HEALTH — PUBLIC HEALTH CODE — PHYSICIAN'S ASSISTANTS — LICENSES.

The statute which specifies the requirements for licensure as a physician's assistant, as applied to an applicant who was licensed under a former act but who is denied a license for failure to meet the requirements under the statute, is not arbitrary or capricious and does not deny that applicant's due process rights (MCL 333.17062; MSA 14.15[17062]; 1980 AACS, R 338.6304).

8. HEALTH — PUBLIC HEALTH CODE — PHYSICIAN'S ASSISTANTS — LICENSES.

The Task Force on Physician's Assistants is not statutorily empowered to grant limited licenses to applicants for licensure as physician's assistants (MCL 333.17058; MSA 14.15[17058]).

9. CONSTITUTIONAL LAW — DUE PROCESS.

The due process clauses of the United States and Michigan Constitutions apply where government action deprives a person of a liberty or property interest; to determine whether due process requirements apply in the first place, courts look to the nature of the interest at stake because to obtain a protectible right a person must have a legitimate claim of entitlement to it, not just an abstract need, desire or unilateral expectation of it (US Const, Am XIV; Const 1963, art 1, § 17).

10. LICENSES — PROFESSIONS — REVOCATION.

Generally, a state license to practice a profession creates no vested interest, and the right which the license grants may be withdrawn for proper cause by the authority which granted it.

*McGinty, Brown, Jakubiak, Frankland & Hitch* (by *Thomas M. Hitch),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Thomas L. Sparks,* Assistant Attorney General, for defendant.

Before: GRIBBS, P.J., and D. E. HOLBROOK, JR., and T. ROUMELL,* JJ.

GRIBBS, P.J. On February 1, 1983, respondent-appellee, the Task Force on Physician's Assistants,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

issued an opinion and order denying petitioner-appellant, Donald E. Nolan's, application for licensure to practice and use the title of physician's assistant. Appellant filed a petition for review in Ingham Circuit Court and, on September 10, 1984, that court denied the petition for review and affirmed the task force's decision. Appellant appeals as of right. We affirm.

On appeal, appellant raises three issues. The first, which is a question of first impression, is whether the task force exceeded its rule-making authority under the Public Health Code, MCL 333.1101 *et seq.;* MSA 14.15(1101) *et seq.,* when it provided, in 1980 AACS, R 338.6304, that an applicant for a physician's assistant license must meet certain educational, training and clinical experience requirements. The second issue is also one which has never been considered by this Court. Appellant argues that the task force has the authority to issue a limited license to him and that it erred when it concluded that it did not have such authority and refused to grant a limited license to him based on his experience in industrial clinics. Appellant's third argument is that the refusal of the task force to grant him a physician's assistant license constituted a denial of due process of law.

Except for a two-year period when he was in the armed forces, appellant has worked continuously as a physician's assistant since 1950. He received a physician's assistant license under the former Physician's Assistants Act, 1976 PA 420, in 1977. The only requirement under the former act was that the individual be employed as a physician's assistant at that time. Similarly, the Public Health Code provided for an interim license if an individual was employed as a physician's assistant on December 29, 1977, MCL 333.17072(2); MSA 14.15(17072)(2). Appellant was granted an interim

license to be effective until the task force formally issued or denied a license pursuant to the code and the rules promulgated by the task force. The rules became effective in December of 1979. Appellant filed a timely application for a noninterim license. The application was found to be insufficient and after a hearing the task force denied appellant licensure to practice as a physician's assistant. In its opinion the task force stated in part:

> At the onset, it should be pointed out that the applicant's experience is not at question. The task force finds the clinical experience requirements to be met.
>
> Clinical training is an area at issue. The task force has consistently interpreted the clinical training portion of the requirement to be a structured experience with blocks of time spent in each to allow maximal exposure to that particular area at one time. If, in this case, Dr. Weisman were to swear and affirm that he provided such specific "rotations" the Task Force would accept this as meeting the requirement of clinical training.
>
> By the applicant's own testimony, however, the education requirements have not been met.

Appellant argues that Rule 304 of the Department of Licensing and Regulation, Task Force on Physician's Assistants, 1980 AACS, R 338.6304, is inconsistent with § 17062 of the Public Health Code, MCL 333.17062; MSA 14.15(17062), because it requires an applicant for a physician's assistant license to have education, training, *and* experience. In his view, the statute only requires an applicant for licensure to have education *or* training *or* experience.

Rule 304 provides as follows:

> (1) The task force shall accept an applicant as having met the education, training, or experience

requirement of sections 17062 and 17060(1)(b) of the act if the applicant can provide sufficient information to enable the task force to evaluate and determine that the applicant has acquired *all* of the following:

(a) Course work of 1 semester of anatomy, 1 semester of physiology, 2 semesters of clinical medicine, 1 semester of pharmacology, 2 semesters of physical diagnosis, 1 semester of biochemistry, 1 semester of clinical pathology, and 1 semester of anatomic pathology.

(b) Clinical training of 1 year, including primary care, pediatrics, surgery, obstetrics and gynecology, psychiatry, internal medicine, and emergency medicine.

(c) Four years of clinical experience, which includes the following activities:

(i) Identification of the level of the health of the patients and the information necessary for evaluation of the health of the patients by the eliciting of medical and psycho-social histories and the performing of physical examinations, as pertinent, the ordering or performing of diagnostic tests, or both, and the recording and transmitting of findings.

(ii) Analysis of all information available to formulate a management plan by differentiating between normal and abnormal findings, developing diagnostic impressions based on data obtained, ordering more definitive tests, and establishing preliminary diagnosis of common primary care problems with physician guidance.

(iii) Development and formulation of a health management plan by conferring with the supervising -physicians and patient, and conferring with patient's family, other professionals, and using community resources, as appropriate.

(iv) Implementation and monitoring of a health management plan by applying established therapeutic practices to the patient's problems and performing general preventive, screening, and prenatal care.

(v) Referral of patients with problems beyond

the individual's competency to appropriate sources of care.

(2) The clinical experience may be gained as either part of a formal educational program or in a practical setting not related to an educational program. The clinical experience shall have occurred within the 5 years immediately prior to the application. [Emphasis added.]

When an agency is empowered to make rules, we use a three-part test to determine the validity of the rules it promulgates. The rules must be within the matter covered by the enabling statute, they must comply with the underlying legislative intent, and they must not be arbitrary or capricious, *Luttrell v Dep't of Corrections,* 421 Mich 93, 100; 365 NW2d 74 (1984), reh den 422 Mich 1201 (1985).

Appellant does not argue that he has, in fact, met the requirements of the rule or that the rule is not within the enabling statute. Rather, it is his contention that the rule either violates the Legislature's intent as expressed in MCL 333.17062; MSA 14.15(17062), or that it is arbitrary and capricious, at least as applied to him. We disagree.

Appellant's argument rests on the language of MCL 333.17062; MSA 14.15(17062), which provides:

An applicant for licensure as a physician's assistant shall meet the requirements of section 16174(a), (b), and (d) [MCL 333.16174(a), (b), (d)] and be a graduate of a program approved by the task force or be a licensed, certified, registered, approved, or other legally recognized physician's assistant in another state with qualifications substantially equivalent to those established by the task force; *or have the education, training, or experience prescribed by this part or the rules of the task force as determined by an examination or evaluation authorized by the task force, as pro-*

*vided in section 17060(1)(b) [MCL 333.17060(1)(b)].* [Emphasis added.]

MCL 333.17060(1)(b); MSA 14.15(17060)(1)(b), provides:

The task force shall:

\* \* \*

Promulgate rules to establish the requirements for the education, training, or experience of physician's assistants for licensure in this state. The requirements shall take into account nationally recognized standards for education, training, *and* experience and the desired utilization of physician's assistants. [Emphasis added.]

Appellant focuses on the use of the word "or" in the emphasized clause of MCL 333.17062; MSA 14.15(17062), and argues that the task force contravened the intent of the Legislature when it gave a conjunctive, rather than disjunctive, meaning to that term.

The primary rule in interpreting a statute is to ascertain and give effect to the Legislature's intent. All other rules of construction serve as guides to assist the courts in determining that intent with a greater degree of certainty, *Farrell v Automobile Club of Michigan,* 148 Mich App 165; 383 NW2d 623 (1986). Where the use of the conjunction "and" or the disjunctive "or" creates an ambiguity in the statute, the language of the statute must be construed to give effect to the Legislature's intent, and the words of the statute must be construed in light of the general purpose sought to be accomplished by the Legislature, *In the Matter of Kreft,* 148 Mich App 682, 688; 384 NW2d 843 (1986).

In ascertaining legislative intent, we look first to the language of the statute, *Oxford Twp v DSS,*

120 Mich App 103, 108; 327 NW2d 409 (1982). The popular use of "or" and "and" is so loose and so frequently inaccurate that it has infected statutory enactments. While they are not treated as interchangeable, and should be followed when their accurate reading does not render the sense dubious, their strict meaning is more readily departed from than that of other words, and one read in place of the other in deference to the meaning of the context, *Heckathorn v Heckathorn,* 284 Mich 677, 681-682; 280 NW 79 (1938); *Reynolds v Great American Ins Co of New York,* 328 Mich 391, 397; 43 NW2d 901 (1950); *L A Darling Co v Water Resources Comm,* 341 Mich 654, 661-662; 67 NW2d 890 (1955); *Romeo Homes, Inc v Comm'r of Revenue,* 361 Mich 128, 137-138; 105 NW2d 186 (1960); *Kreft, supra.*

In *Magreta v Ambassador Steel Co (On Rehearing),* 380 Mich 513, 518; 158 NW2d 473 (1968), the Supreme Court noted:

> We are impelled to reverse our previous position. The prior interpretation accorded to the 2 involved sections and their relationship to each other is what may properly be called a grammatical analytical approach. It can be justified in a purist sense of according to the words, clause, antecedent, and similar terms, their grammatical definitions. Our duty extends beyond this method but does not exclude it completely.
>
> In statutory construction we are bound to determine legislative intent. In the exercise of that duty we are obligated to utilize all the tools of the historic judicial method. We feel we overemphasized the grammatical analysis to the prejudice of other well-recognized and long-established methods.

Thus, it is clear that a literal, grammatical approach to statutory construction is not always

proper. We conclude that the Legislature's use of the term "or" in MCL 333.17062; MSA 14.15(17062) is not determinative of the issue presented in this appeal.

The Public Health Code shall be liberally construed for the protection of the health, safety and welfare of the people of Michigan, MCL 333.1111(2); MSA 14.15(1111)(2). The purpose of the statutes regulating health care professions is to safeguard the public health and protect the public from incompetence, deception and fraud, *Hill v Highland Park General Hospital,* 80 Mich App 334, 340; 263 NW2d 362 (1977); *Michigan Ass'n of Psychotherapy Clinics v Blue Cross & Blue Shield (After Remand),* 118 Mich App 505, 522; 325 NW2d 471 (1982), lv den 417 Mich 1096 (1983).

Legislative intent must be determined from consideration of all provisions of the enactment in question, and each word, sentence and provision should be read together to harmonize the meaning, giving effect to the act as a whole, *Oxford, supra.* Seeming inconsistencies in the various provisions of a statute should be reconciled, if possible, so as to arrive at a meaning which gives effect to all parts of the statute; a construction leading to an absurd consequence should be avoided, *Attorney General v Ankersen,* 148 Mich App 524, 554; 385 NW2d 658 (1986).

We give deference to an administrative agency's interpretation of a statute it is entrusted to enforce, *DAIIE v Comm'r of Ins,* 119 Mich App 113, 120; 326 NW2d 444 (1982), lv den 417 Mich 1077 (1983).

The task force is the agency entrusted with enforcement of the portions of the Public Health Code which regulate physician's assistants. It ruled as follows:

Section 17062 of the Public Health Code states that an evaluation of an applicant's education, training, or experience [shall be conducted by the Task Force under its rules.] . . . Rule 304 requires education, training, *and* experience. To interpret Section 17062 in the general theme of the statute as allowing education *or* training or experience as one would be led to by particular focus on individual words rather than the statute as a whole would seem to render the entire statute void and without meaning. Rule 304 was promulgated to insure that the requirements for everyone applying for licensure as a physician's assistant in the State were consistent. The requirements were established with regard to requirements of physician's assistant programs to allow applicants latitude in gaining education, training and experience, thus allowing for this to be gained outside of a formal full-time program for physician's assistants. But, to allow any one of the areas of requirements to be judged as fulfilling the entire requirement and automatically qualifying the applicant for licensure would obviate the need for anyone to enroll in physician's assistant programs. Both Section 17062 and the subsequent interpretation by Rule 304 are established to assure minimum competence by practitioners in this State. Entry into a physician's assistant program requires a minimum of 2 years of direct patient care experience as a prerequisite for entry. Considering these 2 years and the 24 months in the instructional setting of the program, this sets the experience required for licensure as 4 years, and therefore, consistently makes the same requirement of all applicants for licensure.

If the general theme of the statute is viewed as a whole rather than fragmented words taken out of the entire context, the Code requires certain minimal qualifications be met to obtain licensure as a physician's assistant in the State. This, after all, is the purpose of the Code—to safeguard the public and thus the duty of the task force in promulgating and enforcing any rules must be to

assure that certain minimum standards are met. Consistently, the Task Force has interpreted Section 17062 and Rule 304 together since to focus on the "or" in Section 17062 in such a fragmented manner would nullify the entire Code and one section may not be interpreted as to nullify the Code or another section. [Emphasis in original.]

We agree with the task force's interpretation of the Public Health Code. Appellant's argument is flawed because it places undue emphasis on a literal reading of the word "or" in one portion of the statute, and fails to consider the rest of the enactment. The task force and the circuit court correctly ruled that Rule 304 is consistent with the underlying intent of the Public Health Code.

In addition, we reject appellant's argument that the rule is arbitrary and capricious as applied to him, because it essentially requires a person to graduate from a physician's assistant program even though he has been previously licensed and has practiced as a physician's assistant for years. Arbitrary means fixed or arrived at through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances or significance, and capricious means apt to change suddenly, freakish or whimsical, *Roseland Inn, Inc v McClain,* 118 Mich App 724, 728; 325 NW2d 551 (1982), lv den 417 Mich 987 (1983). While the rule may cause appellant some inconvenience, because it requires him to fulfill certain formal educational requirements, it is neither arbitrary nor capricious. Rather, it is rationally related to the legislative design to ensure that all individuals who practice as physician's assistants meet certain requirements. We decline to reverse on this ground.

Second, appellant argues that the task force's

determination that it has no power to issue limited licenses except in disciplinary proceedings was erroneous. We disagree.

MCL 333.16182; MSA 14.15(16182) provides:

Sec. 16182. (1) A *board* may grant a limited license to an individual when the board determines that the limitation is consistent with the ability of the individual to practice the health profession in a safe and competent manner, is necessary to protect the health and safety of patients or clients or is appropriate to promote the efficient and effective delivery of health care services.

(2) In addition to the licenses issued under subsection (1), a *board* may grant the following types of limited licenses upon application by an individual or upon its own determination:

(a) Educational, to an individual engaged in postgraduate education.

(b) Nonclinical, to an individual who functions only in a nonclinical academic, research, or administrative setting and who does not hold himself or herself out to the public as being actively engaged in the practice of the health profession, or otherwise directly solicit patients or clients.

(c) Clinical academic, to an individual functioning in that capacity but who does not hold himself or herself out to the public as being actively engaged in the practice of the health profession, or otherwise directly solicit patients or clients. [Emphasis added.]

MCL 333.16103(2); MSA 14.15(16103)(2) provides:

"Board" as used in this part means each board created in this article and as used in any other part covering a specific health profession means the board created in that part.

MCL 333.16109(3); MSA 14.15(16109)(3) provides:

"Task Force" means a task force created by this article.

Thus, the terms "board" and "task force," as used in the Public Health Code, are clearly not interchangeable. However, appellant contends that the statute expressly gives the task force the power to grant limited licenses that is usually reserved for a "board." That contention is incorrect.

MCL 333.17058; MSA 14.15(17058) provides:

(1) Notwithstanding part 161 [MCL 333.16101 *et seq.*], the task force shall have the powers and duties vested in it by sections 17058 to 17088 [MCL 333.17058 to 333.17088] which would otherwise have been exercised by the board under that part.

(2) Sections 17058 to 17088 shall supplement and not supersede the provisions of part 161 which apply to task forces and licenses in general.

(3) Sections 17058 to 17088 shall be administered by the task force in a manner consistent with the administration of similar sections under part 161 unless the provisions or context clearly require otherwise.

That provision of the Public Health Code does allow the task force to exercise the powers granted to boards in MCL 333.17058; MSA 14.15(17058) to MCL 333.17088; MSA 14.15(17088). However, it does not give the task force the power to grant limited licenses under MCL 333.16182; MSA 14.15(16182), because that section is not referred to in MCL 333.17058; MSA 14.15(17058). Since MCL 333.16182; MSA 14.15(16182) refers only to the power of a "board" to grant limited licenses, the task force may not grant limited licenses pursuant to that provision.

Third, appellant contends that the refusal of the task force to grant a license to him, when he was

previously licensed under the former physician's assistant statute, constituted a denial of due process of law. We disagree.

The due process clauses of the United States and Michigan Constitutions apply where government action deprives a person of a liberty or property interest. To determine whether due process requirements apply in the first place, courts look to the nature of the interest at stake, because to obtain a protectible right a person must have a legitimate claim of entitlement to it, and not just an abstract need, desire or unilateral expectation of it, *Edmond v Corrections Dep't (On Remand),* 143 Mich App 527, 533; 373 NW2d 168 (1985).

Property interests are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits, *Dow v State of Michigan,* 396 Mich 192, 204, n 19; 240 NW2d 450 (1976). Generally, a state license to practice a profession creates no vested interest and rights granted by license may be withdrawn for proper cause by the authority which granted the license, *Latreille v Michigan State Bd of Chiropractic Examiners,* 357 Mich 440, 444-445; 98 NW2d 611 (1959). The state has discretion, founded on its police powers, to determine whether a person is properly qualified to continue holding a license, *Latreille, supra,* p 445. We conclude that appellant's expectation of obtaining a physician's assistant license when his interim license expired was not an interest protected by the Due Process Clause, US Const, Am XIV; Const 1963, art 1, § 17; *Berkowitz v Dep't of Licensing & Regulation,* 127 Mich App 556, 562-563; 339 NW2d 484 (1983).

Affirmed.