*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RANDALL SHAW and HILLARY SHAW,

       Plaintiff-Appellees,

v

KAMIL MARCIN NOWAKOWSKI,

       Defendant/Cross-Defendant,

and

THE AUTO CLUB GROUP, doing business as AAA
AUTO CLUB GROUP,

       Defendant-Appellant,

and

CRISPELLI'S LLC,

       Defendant/Cross-Plaintiff.

UNPUBLISHED
March 30, 2023

No. 360846
Oakland Circuit Court
LC No. 2020-180321-NI

Before: CAVANAGH, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

       Defendant, The Auto Club Group (defendant), appeals by leave granted an order denying its motion for summary disposition in this case concerning underinsured motorist (UIM) benefits. *Shaw v Nowakowski*, unpublished order of the Court of Appeals, entered May 27, 2022 (Docket No. 360846). We affirm.

## I. BACKGROUND

       Plaintiffs were driving westbound when defendant/cross-defendant, Kamil Nowakowski, crossed the center line and struck plaintiffs' vehicle head-on. Nowakowski, who before the crash

consumed alcohol at defendant/cross-plaintiff's, Crispelli's LLC's, restaurant, was intoxicated at the time of the crash. At all relevant times, plaintiffs' vehicle was insured by defendant. In their first amended complaint, plaintiffs sued Nowakowski and claimed he was liable under the Michigan Motor Vehicle Code, MCL 257.1, *et seq.*, and owner liability under MCL 257.401.

In their second amended complaint, plaintiffs added defendant and claimed defendant wrongfully denied them underinsured motorist (UIM) benefits. Plaintiffs noted that their UIM policy contained two limits of liability: (1) a $250,000 per-person limit, and (2) a $500,000 per-accident limit. Nowakowski had a $300,000 combined single-limit policy of insurance. Plaintiffs alleged that defendant improperly determined that Nowakowski's vehicle was not "underinsured" since his policy limit was greater than the $250,000 per-person limit of plaintiffs' policy and denied their claims for UIM benefits. Plaintiffs requested the trial court to declare they were entitled to UIM benefits and determine the proper calculation of UIM benefits.

Plaintiffs filed their third amended complaint, adding Crispelli's as a party. Plaintiffs claimed Crispelli's was liable for furnishing alcohol to Nowakowski while visibly intoxicated. Crispelli's answered and filed a cross-claim against Nowakowski asserting that Crispelli's was entitled to full indemnification from Nowakowski if a jury determined Nowakowski was served alcohol while visibly intoxicated.[1]

Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiffs were not entitled to UIM benefits because, under the terms of plaintiffs' insurance policy, Nowakowski's motor vehicle was not an underinsured vehicle; his $300,000 policy limit was greater than plaintiffs' $250,000 per-person policy limit. Defendant claimed that the $250,000 per-person limit in plaintiffs' policy applied rather than the $500,000 per-accident limit. Further, citing *Wilkie v Auto-Owners Ins Co*, 469 Mich 41; 664 NW2d 776 (2003), defendant argued that the UIM benefit limit should be reduced by the *limit* of Nowakowski's policy, not by the amount plaintiffs actually *received* from Nowakowski's policy. Defendant also claimed that plaintiffs were not entitled to UIM benefits because Crispelli's $2 million[2] liability limit exceeded plaintiffs' $250,000 per-person liability limit. Defendant argued that, under provision 4(a) of the "Limits of Liability" subsection in plaintiffs' UIM policy, Crispelli's qualifies as an "organization which may be legally liable," therefore, Crispelli's $2 million policy limit relieved defendant's obligation of paying UIM benefits to plaintiffs.

Plaintiffs responded, arguing that the terms of plaintiffs' policy were ambiguous because the policy did not clearly articulate which of the two limits of liability apply: the $250,000 per-person limit or the $500,000 per-accident limit. Plaintiffs, citing *Bogi v Citizens Ins Co of the Midwest*, 427 F Supp 3d 954, 960-961 (WD Mich, 2019), argued that because the insurance policy did not specify which of the two liability limits applied, there were multiple reasonable interpretations of the insurance policy rendering it ambiguous. And, because ambiguous policies

---

[1] Plaintiffs' claims against defendants Nowakowski and Crispelli's were ultimately dismissed by stipulated order, as was Crispelli's cross-claim against defendant Nowakowski.

[2] In the trial court defendant asserted Crispelli's policy had a $2 million limit, but on appeal suggests it is a $1 million limit.

must be construed in favor of plaintiffs, as the insureds, the $500,000 per-accident liability limit should apply with respect to the determination whether Nowakowski's vehicle was an underinsured vehicle. Plaintiffs also argued that *Wilkie* was distinguishable because in *Wilkie* the plaintiff's coverage was reduced by "available" limits whereas, in this case, provision 4 of the "Limits of Liability" subsection reduced plaintiffs' coverage based on the "sums paid or payable" to plaintiffs as the insureds. Therefore, it is not the policy limit that is relevant to a reduction; rather, it is the amount actually paid or payable. Finally, plaintiffs argued that Crispelli's $2 million policy limit was not applicable because—when reading provisions 3 and 4 of the "Limits of Liability" subsection together, only the limits of liability from organizations legally responsible for the underinsured motor vehicle reduce UIM benefits. Because Crispelli's is not an organization legally responsible for Nowakowski's motor vehicle, Crispelli's $2 million policy limit could not be used to reduce plaintiffs' recovery of UIM benefits.

Defendant replied, reasserting that the policy unambiguously states the $250,000 per-person liability limit applies. Defendant argued that the insurance policy's repeated use of the phrase "insured person," read together with the definition of underinsured motor vehicle, and the provisions in the "Limits of Liability" subsection, clearly show that the most plaintiffs could recover is $250,000 per person. However, because Nowakowski's $300,000 policy limit is greater than plaintiffs' $250,000 per-person limit, Nowakowski's motor vehicle is not considered an underinsured vehicle and plaintiffs are not entitled to UIM benefits.

The trial court denied defendant's motion for summary disposition, finding that defendant failed to explain why the $500,000 per-accident limit amount was not relevant or applicable when the "Limits of Liability" subsection expressly referenced plaintiffs' Insurance Policy Declaration Certificate, which lists both the $250,000 per-person and $500,000 per-accident limitations. In other words, the court noted, "plaintiffs are two individuals who would, ostensibly, be eligible for up to $250,000 in UIM benefits each for personal injury." The court noted that Nowakowski's policy limit was $300,000. But if both plaintiff's proved $250,000 in bodily injury damages, then they would theoretically be entitled to $500,000 in UIM benefits, which would exceed the limits of Nowakowski's policy but not plaintiffs' UIM policy. Thus, the court held, because defendant's policy is ambiguous, and ambiguities must be construed against defendant as the drafter of the UIM policy, plaintiffs' interpretation prevailed and the $500,000 per-accident policy limit was applicable. The trial court rejected defendant's argument that the holding in *Wilkie* applied here, noting that this case was not about whether the payment of a specific amount reduces the recovery under a UIM policy; rather, this case is about the applicable policy limits for purposes of determining whether there was an underinsured motor vehicle. Further, the trial court held, Crispelli's $2 million policy limit was not applicable because that policy was not a no-fault policy that applied to Nowakowski's motor vehicle under provision 4 of the "Limits of Liability" subsection. The court acknowledged that there were multiple possible interpretations of provision 4; thus, the insurance policy was ambiguous and such ambiguity must be resolved in favor of plaintiffs. Because provision 3 limits liability to organizations legally responsible for the underinsured motor vehicle, provision 4 should be applied the same way and Crispelli's policy limit would not reduce plaintiffs' recovery of UIM benefits. In summary, the court concluded, defendant was not entitled to summary disposition. Defendant's motion for reconsideration was denied and this appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

A trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, is reviewed de novo. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). Documentary evidence submitted by the parties is reviewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists for the jury to decide. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). If reasonable minds could differ on an issue, a genuine issue of material fact exists. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

This case involves the proper interpretation of an UIM insurance contract. "The construction and interpretation of an insurance policy and whether the policy language is ambiguous are questions of law, which we also review de novo on appeal." *Dancey v Travelers Prop Cas Co of America*, 288 Mich App 1, 7; 792 NW2d 372 (2010). More specifically, UIM coverage is not mandated by statute, and therefore, "the scope, coverage, and limitations of underinsurance protection are governed by the insurance contract and the law pertaining to contracts." *Mate v Wolverine Mut Ins Co*, 233 Mich App 14, 19; 592 NW2d 379 (1998). Accordingly, judicial construction is not permitted with regard to unambiguous contracts; the plain and ordinary meaning of the language controls and the contract must be enforced as written as reflective of the parties' intent as a matter of law. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008); *Rory v Continental Ins Co*, 473 Mich 457, 464, 468; 703 NW2d 23 (2005). However, when a contract's words may reasonably be understood in different ways after consideration of the entire contract, the contract is considered ambiguous. *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 146; 871 NW2d 530 (2015). In other words:

> If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances the contract is ambiguous and should be construed against its drafter and in favor of coverage. [*Raska v Farm Bureau Mut Ins Co of Mich*, 412 Mich 355, 362; 314 NW2d 440 (1982).]

## III. UNDERINSURED MOTOR VEHICLE

Defendant argues that the trial court erroneously denied its motion for summary disposition because Nowakowski's motor vehicle is not considered an underinsured motor vehicle under the unambiguous terms of plaintiffs' UIM insurance policy. However, because the terms of plaintiffs' UIM policy are ambiguous, we conclude that the trial court did not err in denying defendant's motion for summary disposition.

### A. ANALYSIS

Part III of plaintiffs' no-fault insurance policy addresses uninsured and underinsured motorists coverages and defines an "underinsured motor vehicle" as:

> [A] **motor vehicle** whose ownership, maintenance or use has resulted in **bodily injury** of an **insured person** and for which the sum of the Limits of Liability under

all **bodily injury** liability insurance policies, bonds or other security required to be maintained under law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle is less than the limits of Underinsured Motorists Coverage provided the **insured person** at the time of the accident.

Thus, for plaintiffs to quality for UIM benefits, the sum of the limits of liability of Nowakowski's insurance policy must be less than the limits of liability provided to plaintiffs as the "insured person[s]." Under plaintiffs' insurance policy, "insured person(s)" are defined as: "**you**, if an individual, and a **resident relative**," "any other person **occupying your car**," the "**principal named insured**," the "assigned driver," "the **spouse** of the assigned driver," and "an Other Name Insured." Under this definition, both plaintiffs qualify as an "insured person," therefore, the limits of liability apply to both plaintiffs.

Plaintiffs' insurance policy explicitly states that there are two limits of liability for an insured person: a $250,000 per-person limit and a $500,000 per-accident limit. Because there are two stated limits, the determinative question is: which limit is considered when determining "the limits of Underinsured Motorists Coverage provided the **insured person** at the time of the accident" for purposes of the definition of an underinsured motor vehicle?

Defendant contends that the only reasonable interpretation of the policy is that the per-person limit rather than the per-accident limit applies. Specifically, defendant argues that because the definition of an underinsured motor vehicle and provision 1(a) under the "Limits of Liability" subsection both use the phrase "insured person," this definitively implicates the $250,000 per-person limit. The Limits of Liability subsection provides:

> 1. The Limits of Liability for UNINSURED MOTORS COVERAGE and the Limits of Liability for UNDERINSURED MOTORISTS COVERAGE are shown on the Declaration Certificate and apply as follows:
>
> a. the Limit of Liability for each person is the maximum Limit of Liability for all damages due to **bodily injury** to any **insured person** in any one accident. This limit includes any claim of other persons for damages for care and loss of services and society, wrongful death and survivor actions and derivation damages arising out of **bodily injury**.
>
> b. subject to this limit for each person, the Limit of Liability for each accident is the maximum Limit of Liability for all damages due to **bodily injury** resulting from any one accident. This limit also includes any claims of other persons for damages for care and loss of services and society, wrongful death and survivor actions and derivative damages arising out of **bodily injury**.

Defendant's argument, however, ignores that the definition of an "underinsured motor vehicle" explicitly uses the term "limits" in reference to UIM benefits coverage, which implies there is more than one applicable limit. And, the declarations page of plaintiffs' policy clearly states the $250,000 per-person and $500,000 per-accident limits are both available to plaintiffs as insured persons. That is, the definition of "underinsured motor vehicle" uses the plural of the word

"limit" and states "the *limits* of Underinsured Motorists Coverage," leading to a reasonable interpretation that—when there is more than one "insured person" in the accident, the $500,000 per-accident limit applies when determining if the other vehicle involved in the accident was "underinsured." As the trial court noted, in this case, if both plaintiffs proved $250,000 in bodily injury damages, defendant would be liable for the per-accident limit of $500,000, which far exceeded Nowakowski's $300,000 policy limit. But if the definition of "underinsured motor vehicle" only referred to the per-person limit of $250,000—plaintiffs' UIM policy would not be triggered despite the fact that Nowakowski's policy would only cover $300,000 of those bodily injury damages. As the trial court also noted, defendant has failed to explain—even on appeal— "why is the $500,000 per occurrence limit not the applicable 'Limit of Liability,' especially in a situation involving two plaintiffs who are both seeking bodily injury benefits?" Therefore, because the insurance policy does not explicitly state which limit applies when two or more insured persons are injured in the same accident for purposes of the "underinsured motor vehicle" definition, and the terms of plaintiffs' insurance policy can reasonably be read to provide or deny coverage under the same set of circumstances, the policy is ambiguous, and ambiguous terms must be resolved in favor of plaintiffs as the insureds. See *Seils*, 310 Mich App at 146. Thus, the trial court properly rejected defendant's argument and denied defendant's motion for summary disposition.

## IV. REDUCING THE LIMIT OF LIABILITY

Defendant next argues that the trial court erroneously found Crispelli's $2 million policy limit is inapplicable to reduce plaintiffs' UIM benefits. However, because it is reasonable to interpret the plain terms of plaintiffs' insurance policy to exclude Crispelli's as a qualifying organization or policy, the terms of plaintiffs' insurance policy are ambiguous and we conclude that the trial court properly denied defendant's motion for summary disposition.

### A. ISSUE PRESERVATION

For the first time on appeal, defendant argues, under provision 4(b) of the "Limits of Liability" subsection, Crispelli's $2 million policy limit is considered "any other policy" and reduces plaintiffs' recovery to zero. "Michigan generally follows the 'raise or waive' rule of appellate review. Therefore, a litigant preserve[s] an issue for appellate review by raising it in the trial court." *Wells v State Farm Fire & Cas Co*, 509 Mich 855, 856; 969 NW2d 67 (2022) (quotation marks and citations omitted). Because defendant's argument under provision 4(b) is an entirely separate argument raised for the first time on appeal, defendant has waived this argument for this Court's review and is not entitled to relief. *Id*. at 856 n 6.

### B. ANALYSIS

When interpreting an insurance policy, a two-step analysis is employed: "[F]irst, a determination of coverage according to the general insurance agreement, and, second, a decision regarding whether an exclusion applies to negate coverage." *Auto-Owners Ins Co v Harrington*, 455 Mich 377, 382; 565 NW2d 839 (1997). The insured bears the burden to prove coverage, while the insurer bears the burden of proving the applicability of an exclusion. *Seils*, 310 Mich App at 146. "Clear and specific exclusions contained in policy language must be given effect." *Lee v Auto-Owners Ins Co*, 218 Mich App 672, 676; 554 NW2d 610 (1996). "Exclusions are to be read

with the insuring agreement and independent of other exclusions." *Farm Bureau Mut Ins Co v Blood*, 230 Mich App 58, 62; 583 NW2d 476 (1998).

Provision 3 under the "Limits of Liability" subsection of plaintiffs' insurance policy states:

3. If the damages are caused by an **underinsured motor vehicle**, the most **we** will pay will be the lesser of:

a. the difference between the Limits of Liability of this coverage and the sum of the Limits of Liability under all **bodily injury** liability insurance policies, bonds or other security required to be maintained under law *applicable to the driver or to the person or organization legally responsible for the* **underinsured motor vehicle** *and applicable to the* **underinsured motor vehicle**; or

b. the difference between the amount of the **insured person's** damages for **bodily injury** and the sum of the Limits of Liability under all **bodily injury** liability insurance policies, bonds or other security required to be maintained under law applicable to the driver or to the *person or organization legally responsible for the* **underinsured motor vehicle** *and applicable to the* **underinsured motor vehicle**. [Emphasis added.]

Provision 4 under the "Limits of Liability" subsection of plaintiffs' insurance policy states, in relevant part:

4. Any amount payable under this Part will be reduced by:

a. any amount paid or payable by or on behalf of the owner or operator of the **uninsured motor vehicle** or organization which may be legally liable;

b. any amount paid or payable under the Liability Insurance Coverage of this or any other policy;

* * *

A reduction under b. and c. above does not apply unless the amounts paid under Liability Insurance Coverage and Medical Payments Coverage cover the same elements of loss for which the **insured person** would receive Uninsured and Underinsured Motorists benefits.

Defendant first argues the trial court erred in disregarding Crispelli's policy limit because it improperly found the terms of the provisions under the "Limits of Liability" subsection were ambiguous. Defendant claims under provision 4(a), Crispelli's qualifies as an "organization which may be legally liable" to plaintiffs. "The word 'or' is a disjunctive term used to express a choice between alternatives." *Zwiker v Lake Superior State Univ*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 355128; 355377; 357275); slip op at 12. Thus, to satisfy the requirements of the policy, it is not necessary to meet all possible alternatives, rather, it is enough to only satisfy one alternative. See *Jesperson v Auto Club Ins Ass'n*, 499 Mich 29, 35; 878 NW2d 799 (2016).

Provision 4(a) has four possible alternatives: (1) the amount payable will be reduced by any amount paid by or on behalf of the owner or operator of the uninsured motor vehicle; (2) the amount payable will be reduced by any amount payable by or on behalf of the owner or operator of the uninsured motor vehicle; (3) the amount payable will be reduced by any amount paid by or on behalf of the organization, which may be legally liable; and, (4) the amount payable will be reduced by any amount payable by or on behalf of the organization, which may be legally liable. Because alternatives one and two apply to uninsured motor vehicles, they are not relevant to this appeal. However, defendant asserts, under the fourth alternative, plaintiffs are precluded from recovery because Crispelli's is an organization which may be legally liable to plaintiffs for furnishing alcohol to Nowakowski. Crispelli's $2 million policy limit, the total amount payable on behalf of Crispelli's to plaintiffs, is greater than both of plaintiffs' limits of liability. Thus, applying defendant's logic, Crispelli's policy limit can preclude plaintiffs' recovery.

However, while defendant's contention that Crispelli's policy can reduce plaintiffs' recovery may be correct, provision 4(a) can also be read to exclude Crispelli's liability limit. Defendant contends the use of the word "or" in provision 4(a) is disjunctive. But this Court has stated:

> The popular use of "or" and "and" is so loose and so frequently inaccurate that it has infected statutory enactments. While they are not treated as interchangeable, and should be followed when their accurate reading does not render the sense dubious, their strict meaning is more readily departed from than that of other words, and one read in place of the other in deference to the meaning of the context. [*Nolan v Dep't of Licensing & Regulation*, 151 Mich App 641, 649; 391 NW2d 424 (1986) (citations omitted).]

Therefore, depending on the context, it is reasonable to read the word "or" as the word "and." *Id*. Applying that principle here, provision 4(a) would reduce any amount payable by: "any amount paid or payable on behalf of the owner or operator of the uninsured motor vehicle *and* organization which may be legally liable." Under this interpretation, provision 4(a) would reduce defendant's liability by the amount paid or payable by Crispelli's, as an organization, for an *uninsured* motor vehicle. However, because Nowakowski's vehicle was not an *un*insured motor vehicle, but an *under*insured motor vehicle, this interpretation excludes Crispelli's insurance policy. As the definition section of the UIM policy states, an "uninsured" vehicle is not the same as an "underinsured" motor vehicle. Accordingly, the trial court properly rejected this argument.

Defendant additionally characterizes provisions 3 and 4 as exclusions, and claims the trial court erred in construing them together to find Crispelli's liability policy is inapplicable. But defendant offers no evidence to support its contention. Plaintiffs' insurance policy has a clearly labeled subsection titled "Exclusions" that immediately precedes, and is separate from, the "Limits of Liability" subsection. Based on the plain language of plaintiffs' insurance policy, provisions 3 and 4 are not exclusions as defendant claims, and do not need to be read independently. Further, defendant claims the trial court erred in reading provisions 3 and 4 together because they are unrelated and serve different purposes. But when determining coverage under an insurance policy,

pertinent provisions should be read *in pari materia*.[3]  *Skanska USA Bldg Inc v MAP Mech Contractors, Inc*, 505 Mich 368, 380 n 11; 952 NW2d 402 (2020).  The Limits of Liability subsection determines the maximum amount of recovery plaintiffs may receive from defendant in any one accident.  Provision 3 determines the maximum recovery for damages caused by an underinsured motor vehicle.  Provision 4 reduces the amount recovered under provision 3.  It is reasonable to conclude these provisions are related and serve the same purpose of determining the maximum amount of plaintiffs' recovery.  Therefore, the trial court did not err in reading provisions 3 and 4 together.

Because provisions 3 and 4 should be read together, the trial court did not err in finding Crispelli's insurance policy cannot be used to preclude plaintiffs' recovery.  Provision 3 explicitly references liability insurance policies for "organizations legally responsible for the underinsured motor vehicle and applicable to the underinsured motor vehicle."  Provision 4(a) also references an "organization which may be legally liable."  Further, the insurance policy's definition of an underinsured motor vehicle, which states, in relevant part: "[B]odily injury liability insurance policies. . . applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle."  As such, provision 4(a) should be read to apply only to organizations legally responsible for the motor vehicle because all three provisions are used to determine coverage for an underinsured motor vehicle, and thus may be construed together even if they do not explicitly reference each other.  See *Omne Fin, Inc v Shacks, Inc*, 460 Mich 305, 312; 596 NW2d 591 (1999).  And because Crispelli's is not an organization legally responsible for Nowakowski's motor vehicle, the trial court properly excluded Crispelli's insurance policy from provision 4(a).

In summary, the trial court did not err in denying defendant's motion for summary disposition.

Affirmed.


/s/ Mark J. Cavanagh
/s/ Stephen L. Borrello

---

[3] "Statutes *in pari materia* are statutes sharing a common purpose or relating to the same subject. They are construed together as one law, regardless of whether they contain any reference to one another." *Omne Fin, Inc v Shacks, Inc*, 460 Mich 305, 312; 596 NW2d 591 (1999).  Although the *in pari materia* doctrine typically applies to the construction of statutes, our Supreme Court construed the doctrine to also apply to the construction of insurance contracts in *Skanska USA Building*.